[No. 4349.]

CLAYTON V. HALLETT ET AL.

**1. Wills—After Acquired Property.**

Under section 4652 Mills Ann. Stats. a testator may devise real estate acquired after the execution of the will, and the following language in a will, "I give, devise and bequeath all my real and personal estate of whatsoever nature or kind and wheresoever situated * * * and all the rest, residue and remainder of my estate, real, personal and mixed, and wheresoever situated," shows an intention of the testator to dispose of all his estate at the time of his death, and does dispose of his entire estate whether acquired before or after the execution of the will.

**2. Wills—Charitable Uses—Common Law.**

The principles of the common law as it existed prior to the fourth year of James I., so far as applicable are in force in Colorado and charitable uses are to be enforced in accordance with the principles of the common law.

**3. Same—Jurisdiction.**

The statute of 43 Elizabeth, chapter 4, so far as it recognizes or indicates what are charitable uses and gives validity to

gifts for such uses is in force as a part of the common law, but the details of the statute and remedies therein provided are inapplicable and are not in force.        But independently of that statute the courts have original, inherent jurisdiction over charitable gifts and trusts.        "The education and preferment of orphans" is to be regarded in Colorado as a public charity.

**4.  Wills—Charitable Uses—Liberal Construction.**

A bequest or devise to charity is not affected by the law applicable to perpetuities or the accumulation of income, but is to be given the most liberal construction to the end that the wishes of the donor may be enforced.

**5.  Same—Trusts and Trustees.**

A devise to charity is not rendered invalid because trustees are not named, nor because a trustee incapable of taking is named.

**6.  Same—Beneficiaries.**

The courts will enforce a bequest to charity although the beneficiaries are described in an indefinite manner if by any means they are ascertainable, and the fact that the designation of the beneficiaries is left to trustees is no objection to the validity of the trust. It is only in cases where the beneficiaries named are so vague and uncertain that courts are incapable of executing the trust, and where the wishes of the testator cannot be carried out, that the bequest will be declared invalid.

**7.  Wills—Charitable Uses—Municipal Corporations.**

Municipal corporations may take and hold property in trust for charitable uses within the scope of their powers or duties, and if such trust is repugnant to or inconsistent with the proper purposes for which the corporation was created, the corporation may not be compelled to execute it, but it will furnish no ground to declare the trust itself void.

**8.  Same—Class of Inhabitants.**

The city of Denver under its charter may accept and execute a trust for the education of poor white male orphans, and the fact that the devise is for the benefit of a class of the inhabitants does not make it a private charity.

**9.  Wills—Trusts and Trustees—Municipal Corporations—Executory Devise.**

A testator devised his residuary estate to the city of Denver in trust for the founding and maintaining of a college for the education of poor white male orphans, to be established within ten years after the death of testator as in the judgment of his executor might be practicable. The executor was to marshal the assets of the estate, select a site, construct a building and

promulgate rules for the government of the institution.   Held
that the bequest was in the nature of an executory devise, and
even if the city at the time of the death of the testator was in-
capable of accepting and executing a trust, the estate would not
vest in the heirs, and where by a subsequent act of the legis-
lature the city was given full power to accept the bequest and
administer the trust, such incapacity was cured and the devise
will be sustained.

**10.   Wills—Charitable Uses—Beneficiaries.**

Where a testator bequeathed to a city his residuary estate
for the .purpose of establishing and maintaining a college for
the education of poor, white male orphans born of reputable
parents, and provided in · his will that his executors should
devise and promulgate rules and regulations for the govern-
ment of the institution which should have the same force as if
set out in the will, the executors were expressly authorized to
designate in the rules governing the institution how and in what
manner the beneficiaries should be selected and the bequest
was not void because of the uncertainty of the beneficiaries.

**11.   Same.**

Where a testator devised his residuary estate to a city for·
the purpose of establishing and maintaining a college for the
education of poor white male orphans born of reputable parents,
and provided for the appointment of trustees to control the in-
stitution and distribute the funds, if there were no express provi-
sion designating or authorizing the designation of beneficiaries,
the trustees would have implied authority to make such designa-
tion and the devise would not be void because of the uncertainty
of the beneficiaries.

## Appeal from the District Court of Arapahoe County.

George W. Clayton, late of the county of
Arapahoe, departed this life on the 15th of August,
1899.   Afterwards a document purporting to be his
last will and testament was presented to the county
court of Arapahoe county, and, on the 3rd of October,
1899, the said document was admitted to probate and
record as the last will and testament of the said
George W. Clayton, deceased.   Moses Hallett was
appointed sole executor, William M. Clayton not hav-
ing survived his brother.

The fourteenth and fifteenth clauses of the will are as follows:

"*Fourteenth:* All the rest, residue and remainder of my estate, real, personal and mixed, and wheresoever situated, intending and meaning to include therein all reversionary devises and bequests, real and personal estate, the use of which I have hereinbefore given for life, to the several persons above herein mentioned, respectively, after the same shall have been discharged of the respective trusts, by the death of the persons, respectively entitled to the use thereof for life, and all legacies above given which shall lapse, by reason of the death of the legatee prior to my decease, or from any other cause, I do hereby give, devise and bequeath, unto the Corporation of the City of Denver, *in trust* nevertheless, to be devoted solely and exclusively to the founding, establishing and forever maintaining a *permanent College* within the City of Denver, in the County of Arapahoe and State of Colorado, for the better education, and more comfortable maintenance, than they usually receive from the application of public funds, of poor, white male orphan children, somewhat on the plan of the Girard College, in the City of Philadelphia and State of Pennsylvania, but necessarily in a very much smaller way. The College Building shall be of stone, substantially built upon a plat of ground of sufficient size to admit of the construction of additional College Buildings, if the same shall become necessary or expedient. The institution above mentioned shall be established within ten years from and after my decease as may be practicable in the judgment of my Executors. They shall carefully devise and promulgate such rules and regulations as they shall deem proper for the government of the institution, and which shall be carried out, and be obligatory, with the same force and effect as if herein set

forth at large.   And for his services in this behalf
my Executor, Moses Hallett, shall receive the sum of
Five Thousand Dollars per year, until the said College shall be organized.   I make this provision for
my said Executor, Moses Hallett, for the reason that
I believe the burden of this Trust will fall principally
upon him, and I have made provision herein for my
brother William M. Clayton the other Executor, in
case he shall survive me.   The above provision for
compensation to my said Executor Moses Hallett, is
personal to him, and shall not apply to any other
Executor or Trustee, who may become his successor.
It is my desire that in carrying out my purposes, as
set forth, in this section of my will, before a college
site shall be selected, or plan of a College Building
shall be adopted, a careful estimate of the total of my
estate subject to this purpose shall be made and so
much thereof only, shall be devoted to the purchase
of a site, and the building, and the furnishing of the
college as will leave my estate a sufficient fund to
provide revenue for the proper maintenance of the
same and of the orphans admitted thereto, and supplying competent instructors, teachers and nurses
therein, who shall be of tried skill, and of good moral
character.   So much of the residuary of my Estate
as shall remain after the purchase of a site, the erection of the college and the furnishing of the same
with proper furniture and appliances, shall be set
apart and held and kept inviolate forever (save and
except as hereinafter provided) and the income,
rents and revenues thereof, shall be used solely and
exclusively for the maintenance of said institution
and of the Orphans admitted therein.   The institution shall be organized as soon as practicable within
ten years from and after the time of my death, and
due public notice of the intended opening of the college shall be given, so that there may be an opportu-

nity to make selections of competent instructors, teachers and nurses, and that those who may have the charge of Orphans, may be aware of the provisions intended for them. It is my desire that the college shall be under the management and supervision of a Board of five Trustees which shall be composed of the Judge of the District Court of the United States for the District of Colorado or such person as he shall appoint. The senior Judge of the District Court of the State of Colorado of that Judicial District which shall include the County of Arapahoe, or such person as he may appoint, and the Chief Justice of the Supreme Court of the State of Colorado or such person as he may appoint, and my two Executors hereinafter named, during life; and after their decease, two other reputable freeholders of the County of Arapahoe, to be appointed by the Mayor of the City of Denver, with the advice and consent of the City Council of said City, which said Trustees so appointed by the said Mayor, shall hold their office for one year and until their successors shall be appointed and confirmed in like manner. None of the Trustees shall receive any compensation whatever, from my estate, for his services as such Trustee. In as much as I have this matter seriously at heart, and my desire is that the greatest possible good may be derived from my bequest for said College, I do hereby enjoin and require, that if at the close of any year the income of the fund devoted to the purposes of said College be more than sufficient for the maintenance of the institution for that year, then the balance of the said income, after defraying said maintenance, shall be invested in good securities thereafter to be and remain a part of the capital; but in no event shall any part of said capital fund be sold, disposed of, or pledged, to meet the current expenses of the institution. And I do hereby expressly declare that all

the bequests and devises in this section of my will, made of the said residue of my estate, to the said Corporation of the City of Denver, are made upon the following express conditions, that is to say:

First: That the name of said Institution shall be, the *George W. Clayton College.*

Second: That none of the moneys, principal, interest, dividends, income, or rents, arising, or accruing from the said residuary devise and bequest, shall at any time, be applied to any other purpose or purposes whatever, than those herein mentioned and appointed.

Third: That separate, true and accurate accounts, distinct from all other accounts, of the said Corporation of the City of Denver, shall be kept, concerning the said Devise, Bequest, College, and Funds, and of the investment and application thereof, and that separate account or accounts, of the same shall be kept in bank, not blended or mingled with any other account, so that it may at all times appear, on examination by a committee to be appointed by the Judge of the County Court of Arapahoe County that my instructions have been fully and strictly complied with.

Fourth: That the said Corporation shall render a detailed account, verified by oath, annually, to the County Court of Arapahoe County sitting in Probate, at the January Term thereof, concerning the said devised and bequeathed Estate, and the investment and application of the same, and shall submit all their books, papers, and accounts, touching the same to a committee of said County Court, for examination, whenever the same shall be required.

Fifth: The said Corporation shall also cause to be published in the month of January annually, in one or more newspapers published in the City of Denver, a true and concise statement and account, of

the trusts, devises, and bequests, herein declared and made, showing the condition of said college, the number of scholars, and other particulars needful to be publicly known, for the year, next preceding the said month of January.

As many poor, white male orphans—and by the term *orphan* is meant, any child whose father is dead, between the ages of six and ten years, born of reputable parents, as the income shall be adequate to maintain, shall be admitted into the College, as soon as possible, after the opening thereof; and from time to time thereafter, as there may be vacancies, or as increased ability from income may warrant, others shall be admitted; but in giving admission, preferences shall be given—

*1st,* to orphans born in and belonging to, the County of Arapahoe, and *2nd,* to orphans born in and belonging to other Counties in the State of Colorado.

If it should unfortunately happen that any of the orphans admitted into the College, shall from malconduct have become unfit companions for the rest, and mild means of reformation shall prove abortive, they shall no longer remain therein.

Those orphans who shall merit it, shall remain in the College until they shall respectively arrive at between fourteen and eighteen years of age, as in the judgment of the Trustees shall be deemed best; and while there, shall be fed with plain and wholesome food, and clothed with decent apparel; and due regard shall be paid to their health. They shall be instructed in such various branches of sound education, as will tend to make them useful citizens, and honorable members of society.

If the income arising from that part of the said residuary devise and bequest, remaining after the construction and furnishing the said College, shall be adequate to justify it, or if the said institution re-

ceive donations from other generous men or women, and there shall be need of another college building, or buildings, owing to the increase of the number of orphans, then and in that case, the Trustees of said College, may devote so much of the said accumulated income as may be necessary for that purpose, to the building of an additional College building or buildings, having in view at all times a sufficient reserve capital fund to provide revenue adequate for the maintenance of said College and of the Orphans admitted thereto.

*Fifteenth:* I give, devise and bequeath all my real and personal estate of whatsoever nature or kind soever, and wheresoever situated, unto my brother William M. Clayton and Moses Hallett, my trusted friend, the Executors of this my last will and testament, hereinafter appointed, *in trust,* for the payment of my just debts, and the legacies, devises and bequests, above herein specified, and I do hereby expressly authorize and empower them my said Executors, to sell, convey, and dispose of the same, at public or private sale, at such time, or times, and upon such terms, and in such manner as to them shall seem meet; or to improve the same for the purpose of accumulating revenue for the fund, above mentioned; *provided,* they shall have ten years, from my decease to dispose of, sell or to improve to the best advantage, the balance of my real estate, remaining, after the aforesaid bequests are paid, and for the purposes above mentioned.''

On the 27th of February, 1900, Thomas S. Clayton filed his complaint in the district court of Arapahoe county against Moses Hallett, as executor and trustee under the will of George W. Clayton, the city of Denver, the heirs at law of George W. Clayton, and the legatees named in the will, for the purpose of having said will declared to be, as to the residuary

estate of the said George W. Clayton, null and void. Upon the trial proof was made showing that the estate of George W. Clayton was of the value of about two million dollars; that it consisted of various kinds of property in the state of Colorado and other parts of the United States; and a deed was received showing that many parcels of real estate had been conveyed to the said George W. Clayton since the execution of his will. The district court, on the 5th day of March, 1901, rendered judgment in favor of the defendants and against the plaintiff, from which judgment the plaintiff appealed to this court.

The plaintiff insists, as preliminary to the main question, that the estate of the testator acquired after the execution of his will did not pass by the devise.

Upon the question of the validity of the devise in the fourteenth section of the will, his claims are: 1. That the will provides no method by which the beneficiaries shall be selected, and there being no prescribed means by which they can be ascertained, as a class or as individuals, the trust is void because of this indefiniteness. 2. That neither the statute nor the so-called principles or conservative provisions of the statute 43 Elizabeth, chapter 4, are in force in the state of Colorado. 3. That the jurisdiction of the court of chancery in England over charitable uses is derived from three sources,—from its ordinary inherent jurisdiction over trusts, from the prerogative of the crown, from the statute 43 Elizabeth, chapter 4—and that courts of equity in Colorado do not possess the jurisdiction derived from the prerogative of the crown or the jurisdiction derived from the statute of Elizabeth. That they possess only judicial powers and exercise only so much of the jurisdiction of the English court of chancery as was derived from its ordinary, inherent, judicial jurisdiction over trusts. 4. That no trustee competent to

take has been named in the will; that the beneficiaries are indefinite and uncertain and have no vested interest in the property mentioned; and that therefore the supposed trust created by the will is void. 5. That the testator intended this trust to be personal to the city, and, even if the court adopts the English doctrine in all its phases, it cannot substitute another trustee, and the trust must be held void for this reason.

The defendants assert that the district court had not jurisdiction to determine the matters in controversy, and that the plaintiff was estopped by the decree of the county court to assert the invalidity of the devise to the city of Denver, mentioned in the fourteenth paragraph of the will. Further, that the trust is a valid trust; that the city of Denver is competent to take under the will and to administer the trust.

Messrs. CARLON, SKELTON & MORROW, Mr. LUTHER M. GODDARD and Mr. J. B. BISSELL, for appellant.

Mr. W. C. KINGSLEY and Miss MARY F. LATHROP, for appellees.

Mr. JUSTICE STEELE delivered the opinion of the court.

We shall not dwell upon the objection made that the county court was the proper tribunal in which to bring this action, and that the plaintiff, by not contesting in the county court, waived his right to question the validity of the will or any of its devises in any other proceeding, because we are not required to pass upon these questions in order to determine this controversy. We should, perhaps, suggest that the statute makes the probate of a will in this state a solemn proceeding, and that it appears to invest the county court with jurisdiction to determine all ques-

tions of law and fact relating to the proof of wills and matters testamentary.

We shall first dispose of the question presented by the plaintiff that the property of the testator acquired after the execution of the will did not pass, upon his death, to the executors and trustees under the fourteenth and fifteenth clauses of the will. Only such real estate as the testator owned at the time of the execution of his will could pass by the will under the common law. But by section 4652, Mills' Annotated Statutes, a testator is given power to devise the real estate "which he hath, or at the time of his death shall have." This section of our statute was copied from Illinois, and the courts of that state, long prior to its adoption here, construed it as abrogating the rule of the common law; and, under the familiar rule of construction, which we shall presently state, the decisions of Illinois should control.

It is held in Illinois, that if no intention appears from the will to devise after-acquired property, it will not pass, but that such intention is sufficiently shown by the language, "I bequeath all my property, real and personal, wherever the same may be;" and that "it will be presumed, where the contrary does not appear that a party deliberately making his will does not intend to leave anything undisposed of." *Willis v. Watson,* 4 Scam. 64; *Missionary Society v. Mead,* 131 Ill. 338.

In the will under consideration this language is employed: "I give, devise and bequeath all my real and personal esate of whatsoever nature or kind soever and wheresoever situated," etc., and "all the rest, residue and remainder of my estate, real, personal and mixed, and wheresoever situated," etc. This, in our judgment, shows plainly the intention of the testator to dispose of all his estate; and we must hold that the entire estate of which George W.

Clayton died seized passed by his will, unless the trust created by the fourteenth section of the will be declared invalid.

We are of the opinion that the statute 43 Elizabeth, chapter 4, so far as applicable, is in force in the state of Colorado. Our statute which provides that the common law of England, so far as the same is applicable and of a general nature, and all acts and statutes of the British parliament made in aid of or to supply the defects of the common law, prior to the fourth year of James First, shall be the rule of decision, and shall be considered as of full force until repealed by legislative authority, was enacted in 1861 and repealed and re-enacted in 1868. Prior to the re-enactment, the Illinois authorities had held that the statute of Elizabeth referred to was in force in the state of Illinois. Our statute was under consideration by this court in the case of *Chilcott v. Hart,* 23 Colo. 40, and it is there said: "It must be presumed that our legislature was familiar with these decisions, and under a familiar rule of construction, unless there are peculiar reasons for a contrary holding, when a state adopts the statute of another state, the construction which the courts of the latter state put upon the statute before such adoption should be followed by the courts of the adopting state."

It is well settled that long prior to the enactment of the statute of Elizabeth, the courts of chancery of England had exercised jurisdiction over charitable trusts, and had enforced them under its judicial power whenever the intention of the testator was clearly expressed.

Mr. Justice Story, in the case of *Vidal v. Girard's Executors,* 2 Howard, 127, in reference to the case of *The Trustees of the Philadelphia Baptist Association v. Hart's Executors,* 4 Wheat. 1, says: "The court, upon that occasion, went into an elaborate ex-

amination of the doctrine of the common law on the subject of charities, antecedent to and independent of the statute of 43 Elizabeth, c. 4, for that was still the common law of Virginia. Upon a thorough examination of all the authorities and all the lights, (certainly in no small degree shadowy, obscure, and flickering), the court came to the conclusion that, at the common law, no donation to charity could be enforced in chancery, where both of these circumstances, or rather, where both of these defects occurred.'' Namely, where the trustees mentioned in the trust were an unincorporated association which had no legal capacity to take or hold the donation in succession for the purposes of the trust, and the beneficiaries were also uncertain and indefinite.

"But very strong additional light has been thrown upon this subject by the recent publications of the commissioners on the public records of England, which contain a very curious and interesting collection of the chancery records in the reign of Queen Elizabeth, and in the earlier reigns. Among these are found many cases in which the court of chancery entertained jurisdiction over charities long before the statute of 43 Elizabeth; and some fifty of these cases, extracted from the printed calendars, have been laid before us. They establish in the most satisfactory and conclusive manner that cases of charities where there were trustees appointed for general and indefinite charities, as well as for specific charities, were familiarly known to, and acted upon, and enforced in the court of chancery. In some of these cases the charities were not only of an uncertain and indefinite nature, but, as far as we can gather from the imperfect statement in the printed records, they were also cases where there were either no trustees appointed, or the trustees were not competent to take. * * * If, then, this be the true state of the

common law on the subject of charities, it would, upon
the general principle already suggested, be a part of
the common law of Pennsylvania.   It would be no
answer to say, that if so it was dormant, and that no
court possessing equity powers now exists, or has
existed in Pennsylvania, capable of enforcing such
trusts.   The trusts would nevertheless be valid in
point of law; and remedies may from time to time be
applied by the legislature to supply the defects.   It
is no proof of the non-existence of equitable rights,
that there exists no adequate legal remedy to enforce
them.''

And, citing from *Witman v. Lex*, 17 Serg. &
Rawle, 88: ''It is immaterial whether the person to
take be *in esse* or not, or whether the legatee were at
the time of the bequest a corporation capable of taking
or not, or how uncertain the objects may be, provided
there be a discretionary power vested anywhere over
the application of the testator's bounty to those ob-
jects; or whether their corporate designation be mis-
taken.   If the intention sufficiently appears in the
bequest, it would be valid.   In the latter case certain
bequests given by the will of Mrs. Zane to the Yearly
Meeting of Friends in Philadelphia, an unincorpora-
ted association, for purposes of general and indefinite
charity, were, as well as other bequests of a kindred
nature, held to be good and valid; and were enforced
accordingly.   The case then, according to our judg-
ment, is completely closed in by the principles and
authorities already mentioned, and is that of a valid
charity in Pennsylvania, unless it is rendered void by
the remaining objection which has been taken to it.''

It is stated by Woerner in his work on Adminis-
tration that ''The statute of 43 Eliz. c. 4, has been
abolished, or never was in force, in Maryland, Mich-
igan, Minnesota, New York, Virginia, West Virginia,
and, it seems, Wisconsin; and charitable uses are in

those states governed by the same rules as are applied to other devises and gifts, except in so far as the statute of the state may have introduced a change. The statute is held not to be in force, also, in Alabama, California, Connecticut, Delaware, District of Columbia, Indiana, Missouri, New Hampshire, New Jersey, Ohio, Pennsylvania, Rhode Island, Tennessee; but in these states the distinction between charitable uses and ordinary trusts, formerly ascribed, in many of the states, to the operation of this statute, is held to emanate from principles of public policy, recognized at common law, and announced by the courts before the enactment of the statute, which, in this respect, is but declaratory of the pre-existing common law. Hence, the same rules are applied, in these states, as if the statute were in force. The statute is held to be in force in Kentucky, Illinois, Maine, and Massachusetts, to which may be added a number of states in which not the statute itself, but its principles, as declaratory of common law in relation to charitable uses, are held to be the law of the state. Among these may be reckoned Arkansas, California, Georgia, Iowa, Louisiana, Mississippi, North Carolina, South Carolina, Texas, and Vermont." § 431.

So that whether the statute of Elizabeth is held to be in force in this state or not, the principles of the common law, as it existed prior to the fourth year of James I., are in force in this state; and charitable uses are to be enforced here in accordance with the principles of the common law.

The decisions in the United States concerning charitable trusts cannot be reconciled. They can be classified according to states. This has been done by Mr. Woerner, and the authorities cited by him support his text. It seems that at the common law a bequest or devise to charity is peculiarly favored.

It is not affected by the law applicable to perpetuities or the accumulation of income. It is to be given the most liberal construction, to the end that the wishes of the donor be enforced. A devise to charity is therefore not rendered invalid because trustees are not named, nor because a trustee incapable of taking is named. The court, in the exercise of its judicial functions, will never permit a trust to fail for the want of a trustee. Though the beneficiaries are described in an indefinite and uncertain manner, the courts will enforce the bequest and uphold the trust, if by any means the beneficiaries are ascertainable. If the question of the designation of the beneficiaries is left to trustees, it is no objection to the validity of the trust; and it is only in cases where the beneficiaries named are so vague and uncertain that courts are incapable of executing the trust, that the trust is declared to be invalid. In England, courts assume the authority of substituting a scheme of their own in cases where the scheme proposed by the testator is vague and uncertain, but in this country, the courts possess no such power, and never substitute another charity for the charity named by the testator; and it is only in cases where the wishes of the testator cannot be carried out that the trusts fail.

The following cases and the citations therein are decisive of one or more of the various questions involved in this controversy, and in them we find the following propositions fully sustained: That the statute of 43 Elizabeth, chapter 4, so far as it recognizes or indicates what are charitable uses, and in so far as it gives validity to gifts for such uses, is in force in this country as a part of the common law, unless it has been expressly repealed. That the details of the statute, and the remedies provided therein, are not applicable to our conditions or institutions and are not in force here. That, independently

of that statute, the courts of this country have original, inherent jurisdiction over charitable gifts and trusts. That such jurisdiction was exercised by the courts of England prior to the enactment of the statute of Elizabeth. That in the exercise of this jurisdiction the courts will enforce such gifts in accordance with the desires of the donor. That a gift for charitable purposes will not fail for want of a trustee. That such gifts are excepted from the rule against perpetuities and accumulation. That it is not necessary that the beneficiary or the trustee should be clothed with power or capacity to accept the gift at the time of the grant, but the intention of the donor will be executed if a capacity arises within a reasonable time thereafter. That a charitable gift will not fail because it favors a class of the population. That it is immaterial how indefinite or vague the subjects are, provided there be a discretionary power vested anywhere over the application of the donor's bounty. That where there exists the least circumstance from which to collect the testator's intention of anything else than an immediate devise to take effect *in praesenti,* then, if confined within legal limits, it is good as an executory devise. That municipal corporations may hold property in trust for charitable uses within the scope of their powers or duties. That if such trust is repugnant to or inconsistent with the proper purposes for which the corporation was created, that may furnish a ground why it may not be compelled to execute it, but it will furnish no ground to declare the trust itself void. That a devise to a corporation for charitable uses operates as an appointment rather than a bequest. (2 Blackstone Com. 376). *In re John's Will,* 30 Ore. 494; *Pell v. Mercer,* 14 R. I. 412; *Zimmerman v. Anders,* 6 W. & S. 218; *Taylor v. Trustees,* 34 N. J. E. 101; *Goodale v. Mooney,* 60 N. H. 528; *Howe v.*

*Wilson,* 91 Mo. 45; *Ould v. Washington Hospital,* 95
U. S. 303; *Miller v. Chittenden,* 2 Iowa, 315; *Miller
v. Chittenden,* 4 Iowa, 252; *Attorney General v.
Jolly,* 1 Rich. (S. C.) 99; *Wade v. Am. Col. Soc.,* 7
S. & M. (Miss.) 663; *Fink v. Fink,* 12 La. Ann. 300;
*Doughten v. Vandever,* 5 Del. Ch. R. 51; *Williams v.
Pearson,* 38 Ala. 299; *Executors of Burr v. Smith,* 7
Vt. 240; *Bell County v. Alexander,* 22 Texas, 351;
*Beall v. The Executors of Fox,* 4 Ga. 404; *Estate of
Hinckley* 58 Cali. 457; *Grisson v. Hill,* 17 Ark. 483;
*Trustees v. Zanesville C. & M. Co.,* 9 Ohio, 203; *Mo.
Hist. Soc. v. Academy of Science,* 94 Mo. 459; *Moore
v. Moore,* 4 Dana, 354; *Chambers v. City of St. Louis,*
29 Mo. 543; *Tappan v. Deblois,* 45 Me. 122; *Heuser
v. Harris,* 42 Ill. 425; *Sears v. Chapman,* 158 Mass.
400; *Craig v. Secrist,* 54 Ind. 419.

It may be stated as a general proposition of law,
that a corporation capable of holding real estate is
capable also of executing a charitable trust, unless the
statute or the articles of incorporation prohibit it.
And unless specially restrained, municipal corpora-
tions may take and hold property in their own right
by direct gift, conveyance or devise, in trust, for pur-
poses germane to the objects of the corporation, or
which will promote, aid, or assist in carrying out or
perfecting those objects. So, in this case, unless the
objects of the incorporation of the city of Denver are
foreign to the purposes expressed in this trust, the
city of Denver is capable of taking the property and
executing the trust in accordance with the provisions
of the will.

It is said that by the constitution and laws of Col-
orado the municipalities of the state are inferentially
prohibited from maintaining schools; that that func-
tion of government is left to the school districts of
the state; and that this provision of the will of
George W. Clayton should not be enforced because of

the policy of the state so expressed. As far as the policy of the state is concerned, the act of 1901 enabling the city of Denver to take gifts by devise declares· it to be in favor of the city's accepting such devise.

Gilbert Hatheway died in 1871, and by will gave to the corporation of the village of New Baltimore fifteen thousand dollars to be used in the erection of a school building to be used as a high school and to be suitable for that purpose, and to be known as the Hatheway School. The legislature of Michigan, in the year 1873, passed an act enabling the village to accept the gift. In the case of *Hatheway v. Sackett,* 32 Mich., 99, a case in which this legacy was under consideration, the court said: "They (the plaintiffs in error) insist that our general state policy is opposed to all connection between village government and school administration, and then seek to infer that this general policy is applicable to this specific case. But the act of 1873 negatives this inference; because, whatever its force as an enabling act, it is, at least, a direct and explicit expression of the sense of the legislature that in truth it is not impolitic for the village of New Baltimore to accept this very bequest. We have, then, distinct and solemn evidence that the legislature have considered it entirely consistent for the corporation to have the identical legacy in question."

It is said by Judge Dillon, in his work on Municipal Corporations, that "Municipal and public corporations may be the objects of public and private bounty. This is reasonable and just. They are in law clothed with the power of individuality. They are placed by law under various obligations and duties. Burdens of a peculiar character rest upon compact populations residing within restricted and narrow limits, to meet which property and revenues

are absolutely necessary, and, therefore, legacies of personal property, devises of real property, and grants of gifts of either species of property directly to the corporation or for its own use and benefit, intended to and which have the effect to ease it of its obligations or lighten the burden of its citizens, are, in the absence of disabling or restraining statutes, valid in law. Thus, a conveyance of land to a town or other public corporation, for benevolent public purposes, as a site for a school house, city or town house, and the like, is based upon a sufficient consideration, and such conveyances are liberally construed in support of the object contemplated." § 566.

And in Perry on Trusts, § 43, it is said: Municipal corporations cannot "act as trustees if they are forbidden to take and hold lands, as by the statutes of mortmain, nor if they are not empowered to take the property. But if the trusts are within the general scope of the purposes of the institution of the corporation, or if they are collateral to its general purposes, but germane to them, as if the trusts relate to matters which will promote and aid the general purposes of the corporation, it may take and hold, and be compelled to execute them, if it accepts them. Thus towns, cities, and parishes may take and hold property in trust for the establishment of colleges, for the purpose of educating the poor, for the relief of the poor, though not paupers, by furnishing them fuel at a low price, and for the support of schools, or for any educational or charitable purposes within the scope of its charter." And cases are cited in support of the text.

Charles McMichen, a citizen and resident of Cincinnati, made his will in 1855, and died in 1858 without issue. He devised certain real and personal property to the city of Cincinnati and its successors, in trust, forever, for the purpose of building, estab-

lishing, and maintaining, as far as practicable, two colleges for the education of boys and girls. The)supreme court of the United States, in *Perin v. Carey,* 24 Howard, 465, held, that this was a valid devise, and that "the city of Cincinnati, as a corporation, is capable of taking in trust devises and bequests for charitable uses, and can take and administer the devises and bequests in the will of C. McMichen." Upon this subject of the authority of municipal corporations to administer a trust, Mr. Justice Wayne, speaking for the court, said: "The law is, that where the corporation has a legal capacity to take real or personal estate, then it may take and hold it upon trust in the same manner and to the same extent as private persons may do. It is true that if the trust be repugnant or inconsistent with the proper purposes for which it was created, that may furnish a good reason why it may not be compelled to execute it. In such a case, the trust itself being good, will be executed under authority of a court of equity. Neither is there any positive objection, in point of law, to a corporation taking property upon trust not strictly within the scope of the direct purposes of its institutions, but collateral to them, as for the benefit of a stranger or another corporation. But if the purposes of the trust be germane to the objects of the corporation, if they relate to matters which will promote and perfect these objects, if they tend to the suppression of vice and immorality, to the advancement of the public health and order, and to the promotion of trade, industry, and happiness, where is the law to be found which prohibits the corporation from taking the devise upon such a trust in a state where the statutes of mortmain do not exist, the corporation itself having an estate as well by devise as otherwise? We know of no authority which inculcates such a doctrine, or prohibits the execution of such trusts,

even though the act of incorporation may have for its main objects mere civil and municipal government and powers.''

Stephen Girard died in the year 1831, and by his will devised and bequeathed to the city of Philadelphia the residue of his estate in trust for the establishment and support of a permanent college for the education of poor white male orphans. This devise was sustained by the supreme court of the United States, and the court held, that ''The corporation of the city of Philadelphia is capable of taking under a devise of real and personal estate in trust for the establishment and support of a college for poor orphan boys, and can execute the trust. *Vidal v. Girard,* 2 How., 61.

Bryan Mullanphy died in the year 1851, and by his will devised and bequeathed the undivided one-third of his property to the city of St. Louis, in trust, ''to be and constitute a fund to furnish relief to all poor emigrants and travelers coming to St. Louis on their way to settle in the West,'' and this trust was sustained by the supreme court of Missouri, in the case of *Chambers v. City of St. Louis,* 29 Mo., 543.

It is said that the legislature has not granted to the city of Denver authority to acquire and hold real and personal property, except as it is necessary for the public uses of the inhabitants thereof, and that for that reason the bequest and devise to the city of Denver is an invalid one and should be declared void, and the court should hold that as to his residuary estate George W. Clayton died intestate. The decisions are, as we have cited, to the effect that where municipal corporations are organized for purely governmental purposes, they may accept gifts for charity if the charity is germane to the general purposes of the organization. The general

purpose of all municipal corporations is to promote the general welfare and happiness of the people residing therein. Such was the purpose of the legislature in granting to the city of Denver its charter. To say that because this devise is for the benefit of a class of the inhabitants of the city of Denver or elsewhere it is a private and not a public charity is contrary to the decisions upon the subject.

The sections of the charters of Philadelphia, Cincinnati, and St. Louis quoted in the cases cited show that the charters of these cities and the charter of Denver are practically alike. In each is contained the general provisions found in nearly all charters, that tend to the suppression of vice and immorality, to the advancement of the public health and order, and to the promotion of trade, industry, and happiness. If the city of Philadelphia can hold property in trust for the education of poor white male orphans, and the city of Cincinnati can lawfully execute a trust for the education of boys and girls, and the city of St. Louis can, without violating its organic law, administer a trust "for the purpose of furnishing aid to poor emigrants" passing through the city, there is no apparent reason why Denver, under her charter, which provides for the entertainment of visitors (trade), for the encouragement of manufactures (industry), for the assistance of charitable organizations, and for the good order, health, good government, and general welfare of the city, cannot accept and execute a trust for the education of poor white male orphans.

Furthermore, the legislature, by the act of 1901, clothed the city of Denver with full power and authority to accept the trust created under the will, and to administer it according to the terms and provisions of the devise. It is said that this devise must be construed with reference to the capacity of

the city at the time of the death of George W. Clayton; that the estate, at the time of George W. Clayton's death, vested either in the heirs or in the trustee named. We can not agree with counsel in this contention. The devise to the trustee is in the nature of an executory devise. It is to take effect when the executor, Moses Hallett, or an administrator with the will annexed, marshals the assets of the estate, selects a site, and erects a building, in accordance with the provisions of the will. Then, and not till then, in our judgment, is the city of Denver called upon to accept or reject the trust imposed.

An act of the New York legislature was passed after the death of a testator, authorizing a town to accept a gift for charitable purposes made by a resident of Massachusetts. The validity of the gift was contested in the Massachusetts court. In *Fellows v. Miner*, 119 Mass., 541, the court says: "This bequest is 'to the town of Kinderhook, New York, in its corporate capacity,' in trust for the charitable uses and purposes declared in the will. The St. of New York of 1875, c. 200, sec 1, expressly authorizes that town in its corporate capacity to receive and hold in trust all property bequeathed to it by this will, for the uses and purposes therein mentioned. The bequest being valid by the law of this state, the town named in the will as trustee being now enabled, by a special act of the legislature of the state in which it is situated, to take the bequest, and the trust being directed by the will to be executed in that state and for the benefit of the inhabitants of that town, the court might properly direct that the fund be paid over to the town, if it were clear that the trust could thereupon be lawfully administered according to the will of the testator."

In the case of *DeCamp v. Dobbins*, 29 N. J. Eq., 36, the court says: "If a corporation takes land

by grant or devise, in trust or otherwise, which, by its charter, it can not hold, its title is good as against third persons and strangers; the state alone can interfere. And again, if the limitation did, in fact, exist, the legislature might remove the restriction to permit the corporation to execute the trust or authorize it to receive the gift and administer the trust, notwithstanding the limitation. This court will not suffer a trust to fail for want of a trustee, will uphold a trust for a reasonable time, when necessary, in order to enable the trustee to obtain the requisite authority to take and execute it. But, again, the restriction insisted upon does not, in fact exist. It was removed by the act of 1872."

Mr. Justice Thompson, in the case of *Inglis v. Trustees of the Sailor's Snug Harbor,* 3 Peters, 99, said, in reference to the will of Robert Richard Randall and the act of the legislature passed after his death: "If, after such a plain and unequivocal declaration of the testator with respect to the disposition of his property, so cautiously guarded against, and providing for every supposed difficulty that might arise, any technical objection shall now be interposed to defeat his purpose, it will form an exception to what we find so universally laid down in all our books, as a cardinal rule in the construction of wills, that the intention of the testator is to be sought after and carried into effect. But no such difficulty in my judgment is here presented. If the intention of the testator can not be carried into effect, precisely in the mode at first contemplated by him, consistently with the rules of law, he has provided an alternative, which, with the aid of the act of the legislature, must remove all difficulty." And Mr. Justice Johnson, in a concurring opinion, said: "But as a charity, to be governed by the law of the state of New York, it appears to me almost idle to

view this case with reference to any other rule of decision than their own adjudications. The case of the *Trustees of New Rochelle,* 7 Johns. Ch. Rep., 292, was a case of greater difficulties than the present; for there the devise is immediate *in praesenti,* to a devisee having no capacity to take at the time. The legislature afterwards gave that capacity, and the court held the devise valid; nor is it unimportant in that case to observe, that the case in Ambler, 422, of the devise to 'the poor inhabitants of St. Leonard's Shore Ditch,' is recognized as authority, as well as that of *Jones v. Williams,* in the same book, 651. Now this decision seems full to these points: 1. That the legislature of that state can, *ex post facto,* give a capacity to take a charity, where there was no such capacity existing at the time of devise over, in a case where the future existence of that capacity was not contemplated by the testator. 2. That an act of incorporation, with capacity to take, dispenses with the presence of the representative of the state, in a suit to recover such charity. * * * It is in general true that where there is a present immediate devise, there must exist a competent devisee, and a present capacity to take. But it is equally true that if there exist the least circumstance from which to collect the testator's contemplation or intention of anything else than an immediate devise, to take effect *in praesenti,* then, if confined within the legal limits, it is good as an executory devise. * * * Upon the whole, I am of opinion that the act of incorporation was at least equivalent to the king's sign-manual, and vested a good legal estate in the tenant. That although in the interval it should have descended upon the heir, it descended subject to be devested and passed over by that exercise of prerogative power. But I perceive no necessity for admitting that it ever de-

scended upon the heir; since the right of succession seems rather to be in the commonwealth in the case of charities, as *parens patriae.*" ⎷

Counsel say that the will provides no method by which the beneficiaries shall be selected, and there being no prescribed means by which they can be ascertained as a class or as individuals, the trust is therefore void because of this indefiniteness. The will provides that as many poor white male orphans, born of reputable parents, as the income shall be adequate to maintain shall be admitted to the college. And it is said that the word reputable is not defined by the testator, and that no person is designated to determine who are entitled to admission as students. In the books it is said the thing given becomes a charity when the uncertainty of the recipient begins. It is no objection, then, to the enforcement of this devise that the beneficiaries are uncertain. But let us see whether the will itself is so vague and uncertain. These words appear in the will of Mr. Clayton: "The college building shall be of stone, substantially built upon a plat of ground of sufficient size to admit of the construction of additional college buildings if the same shall become necessary or expedient. The institution above mentioned shall be established within ten years from and after my decease, as may be practicable in the judgment of my executors. They shall carefully devise and promulgate such rules and regulations as they shall deem proper for the government of the institution, and which shall be carried out and be obligatory with the same force and effect as if herein set forth at large." This is, in our judgment, an express authority for the executors of the will of Mr. Clayton to promulgate rules and regulations for the control and management of this college, which shall be obligatory upon the trustees of the college after it is

erected and turned over to them, and in the making of these rules and regulations it will undoubtedly be necessary for them to designate how and in what manner the persons to receive the benefits of the college education and to receive the benfits of Mr. Clayton's bounty shall be selected and determined; and if there were no express provisions in his will, we think there is an implied authority granted to the board of trustees of the college to make such rules and regulations, and thereby determine who shall be the recipients of the charity.

In the case of *Hunt v. Fowler*, 121 Ill., 269, the court had under consideration a devise of the residue of an estate directing that the income be distributed annually "among the worthy poor of the city of Lasalle, in such manner as the court of chancery may direct;" and it was held that the residuary bequest was a valid charitable gift and should be carried into effect by a court of chancery. And further, that in the case of a charitable bequest it is immaterial how vague, indefinite and uncertain the object of the testator's bounty may be, provided there is a discretionary power vested in some one over its application to those objects. Mr. Justice Sheldon, delivering the opinion of the court, at page 276, states: "The entire contention in this case arises upon the construction, validity and effect of this residuary clause of the codicil. It is insisted that this clause is void for uncertainty as to the benficiaries. This is not a bequest to charity generally or to the poor generally, but to the worthy poor of the city of Lasalle. The class here is definite—the worthy poor of the city of Lasalle—but the individuals of the class to whom the bounty is to be distributed are uncertain. There is always this uncertainty as to individuals in the case of public charities, and it is this feature of uncertainty which distinguishes pub-

lic charities from private charities—charitable trusts from private trusts; and to hold charitable gifts to be void because of such uncertainty is to reject this whole distinctive doctrine of charitable trusts. * * * In *Hisketh v. Murphy,* 36 N. J. Eq., 304, the testator's will empowered and directed the trustees to employ the annual income of the fund 'for the relief of the most deserving poor of the city of Paterson aforesaid, forever, without regard to color or sex; but no person who is known to be intemperate, lazy, immoral or undeserving, to receive any benefit from said fund.' It was objected that the gift could not be applied to its objects, and was void, because the will did not confer upon any one the power of ascertainment of the individuals who should receive the benefit of the bequest. But the court held that the power given the trustee, by the will, to distribute the fund, carried with it, by necessary implication, the power to select the beneficiaries from the designated class, and upheld the bequest. We entirely agree with the criticism there made by Chief Justice Beasley, upon the case of *White v. Fisk,* that there was a mistaken assumption on the part of the court in that case that there was no power to select the objects of the charity, lodged by the testator in the trustees—that when a power is conferred on the trustees to distribute the fund to members of a class, such members having certain qualifications which can be ascertained only by the exercise of judgment and discretion, as the act of distribution can not be performed except after such ascertainment of the particular beneficiaries, the principal power to distribute the moneys carries with it the incidental and necessary power of selection. And this, upon the ordinary doctrine that when an act is authorized to be done by a trustee or other agent, every authority requisite to the doing of such

act is, by intendment of law, comprised in such grant of power."

We are therefore of the opinion that not only is power expressly granted by the terms of this will to the executors to designate and appoint persons to be entitled to the privileges conferred by the will of Mr. Clayton, but that the appointment of trustees, granting them authority to control and supervise the college, carries with it by necessary implication the authority to designate the beneficiaries.

"A charity," said Mr. Justice Gray, when of the supreme court of Massachusetts, "in a legal sense, may be fully defined as a gift to be applied consistently with existing laws, for the benefit of an indefinite number of persons, either by bringing their minds or hearts under the influence of education or religion, by relieving their bodies from disease, suffering or constraint, by assisting them to establish themselves in life, or by erecting or maintaining public buildings or works, or otherwise lessening the burdens of government."

Here, then, is a public charity. Through it Mr. Clayton seeks to bring the minds and hearts of poor orphans under the refining influence of education. After making such provision as he thought proper for the natural objects of his bounty, he has selected, as deserving of his benevolence, the poor white orphan boys of Denver and Colorado, and has devoted the residue of his great fortune to the erection and support of a permanent college for their free instruction and maintenance, that they may become useful citizens and honorable members of society. It is an indulgent, edifying, and worthy charity. It will lessen Denver's burdens of government. To thousands of poor orphan boys it will be a blessing forever, and it will be by them forever blest.

Our conclusions, therefore, are: That "the ed-

ucation and preferment of orphans," being one of the subjects mentioned in the statute of 43d Elizabeth, chapter 4, is to be regarded in Colorado as a public charity. That, there being power vested in the executor and the board of trustees of the college to select the objects of the testator's bounty, the trust created by the fourteenth section of the will is valid. That the city of Denver, in its corporate capacity, has power to accept the trust created, and to execute it in accordance with the intention of the testator as declared in the fourteenth section of his will.

For the reasons given, the judgment of the district court is affirmed.

*Affirmed.*