No. 12,089.

In Re Forrester's Estate.
Johnston, et al., *v.* Colorado State Bureau of Child and Animal Protection, et al.

Decided July 1, 1929.

Messrs. Bouton & Johnson, Messrs. Courtright, Sid-

NER, LEE & GUNDERSON, Messrs. GARWOOD & GARWOOD, Messrs. CHASE & CHASE, for plaintiffs in error.

Mr. WILLIAM L. BOATRIGHT, Attorney General, Mr. J. L. BREITENSTEIN, Assistant, Mr. JOHN H. REDDIN, Mr. J. H. BURKHARDT, for defendants in error.

*En Banc.*

MR. CHIEF JUSTICE WHITFORD delivered the opinion of the court.

THIS is a writ of error to review the judgment of the county court, admitting to probate the last will and testament of Fred H. Forrester. Forrester died in 1927, leaving no widow or issue, and no father, mother, brother or sister, and no issue of any deceased brother or sister. Consequently, caveators were all collateral relatives. The estimated value of the estate was about $150,000. The testator made specific bequests amounting to $5,500, leaving the remainder of his estate to the Colorado State Bureau of Child and Animal Protection, but through inadvertence, designated it as the Colorado State Board of Child and Animal Protection. However, no point was made by the objectors to this inaccuracy in designating the beneficiary. The will was executed on the 7th of October, 1921. By codicil, on September 2, 1925, the Colorado National Bank was named executor, in lieu of the Home Savings and Trust Company and Frank L. Bishop. The objections of caveators were exclusively directed to paragraph nine of the will, which reads as follows: "Ninth: Should I be unmarried at the time of my death I give and bequeath all the balance of my estate (after my just debts are paid) of every name and nature, and description, consisting of real estate in Denver, and Pueblo and Adams county, Colorado, moneys and bonds in banks in Denver, personal effects, my insurance business (which should be sold to the highest bidder), all I give

and bequeath to the Colorado State Board of Child and Animal Protection (E. K. Whitehead Secy. at this date), requesting it to use the same in perpetuity, in affording relief to hungry, thirsty, abused and neglected cattle, horses, dogs and cats in Denver, and in Colorado at large, and to use the income, or the principal at its discretion, in prosecuting those who neglect animals or who abuse them. I request that three (3) iron drinking fountains for animals be erected in downtown Denver, the City of Denver having been niggardly and selfish in that respect; I especially request that my dog Shep (if living) be given every care and a good home during his life and a decent burial upon his passing. Any person may be proud of this dog's friendship. No part of my estate is to be spent upon human beings (except as specifically stated herein), nor upon, or for the so-called Juvenile Court of Denver. Should the said State Board of Child and Animal Protection be legislated out of business, or be superceded by another institution of its kind, whether state or private, then this bequest is to go to its successor. I request the Home Savings and Trust Company and Frank L. Bishop, of Denver, to act as my Executor, in connection with the State of Colorado, the latter being the principal beneficiary hereunder. (The State Board of Child and Animal Protection being at this date a State institution.)''

It is clear, from the reading of this paragraph of the will, that the testator did not intend that his property should go to any one of his heirs named in the caveat, or he would have so directed in his will. It is also clear beyond doubt that he did intend that the residue of his estate should be devoted in perpetuity to the relief of certain domestic hungry, thirsty, abused and neglected animals, through the instrumentality of the Colorado State Bureau for Child and Animal Protection, but the objectors contend that, notwithstanding this clear intention of the testator to give and devise his estate in per-

petuity for the benefit of dumb animals, the gift does not constitute a charitable trust, and, therefore, the residuary estate did not pass to the Bureau of Animal Protection, as intended by the testator, but, by virtue of our law of descent, passed to the testator's heirs, as intestate property. We are thus confronted at the very outset with the question, whether this bequest in paragraph nine, for the relief of hungry, thirsty, abused and neglected cattle, horses, dogs and cats, constitutes a charitable trust.

Justice Swayne, of the Supreme Court of the United States, says, "A charitable use, where neither law nor public policy forbids, may be applied to almost anything that tends to promote the well-doing and well-being of social man." *Ould v. Washington Hospital,* 95 U. S. 303, 24 L. Ed. 450.

Cruelty, whether to man or beast, is certainly degrading to mankind, and it would seem to follow that the relief of dumb animals from neglect and abuse would tend to further the well-being of society. To provide for such relief is not in contravention of law or morals; neither is it in violation of law to render financial aid, in harmony with the public policy of the state, to enforce obedience to the statute of the commonwealth against cruelty to animals. Such a bequest is educational in effect, and makes for the moral betterment of man. Judge Chitty says: "Cruelty is degrading to man; and a society for the suppression of cruelty to the lower animals, whether domestic or not, has for its object, not merely the protection of the animals themselves, but the advancement of morals and education among men." *In Re Foveaux,* Law Reports, 2 Chancery Div. (1895) 501, 507.

The Supreme Court of California says: "Gifts to benefit man through the medium of benefiting animals are good charities." *In Re Estate of Coleman,* 167 Cal. 212, 214, 138 Pac. 992, Ann. Cas. 1915C, 682.

Mr. Tyssen, in his work on charitable bequests, says, "The ground on which trusts for the benefit of animals

are held charitable seems to be that such trusts are for the benefit of mankind, although sometimes the fact that the animals benefit is considered to be sufficient.'' Tyssen's Charitable Bequests, 112.

Mr. Alexander, in his work on wills, page 1645, says: ''A gift or devise for the benefit of useful animals is for a charitable purpose. Thus a bequest to a city to erect a suitable fountain for the benefit of thirsty animals and birds; a bequest to park commissioners for a fountain with a drinking basin for horses; a bequest for the founding of an institution for the study and cure of maladies of quadrupeds or birds useful to man; a bequest to a society to promote prosecution for cruelty to animals; a bequest for the maintenance of starving and forsaken cats; a bequest for the publication of a paper by a society for the prevention of cruelty to animals; a bequest to a home for lost dogs; and for the suppression and abolition of vivisection, are all for charitable purposes.''

Moreover, the policy of this state is in harmony with the view that the humane treatment of dumb animals is for the moral betterment of society, for in 1901 our school laws were so amended as to make it obligatory upon the school authorities to instruct the children on that subject by giving weekly lessons on the humane treatment of animals. S. L. 1901, p. 362.

We are of the opinion that the bequest for the relief of hungry, thirsty, abused and neglected cattle, horses, dogs and cats, and for the prosecution of persons who abuse and neglect them, constitutes a public charity.

Having thus determined that the gift is a charitable one, it cannot, of course, be affected by the law against perpetuities, which we have many times held has no application to public charitable gifts. *Clayton v. Hallet,* 30 Colo. 231, 70 Pac. 429; *Haggin v. Trust Co.,* 69 Colo. 135, 169 Pac. 138.

Another contention of the caveators is that the Colorado State Bureau for Child and Animal Protection has no power to take and hold real and personal property

for the purposes mentioned in paragraph nine of the will. There is no merit in this contention. The Colorado Humane Society was incorporated in 1881, under the laws of the state relating to corporations for charitable purposes, and provided in its charter that its purposes were to prevent cruelty to animals by all proper means. In 1901 the legislature passed a special act by which it constituted the Colorado Humane Society the Bureau of Child and Animal Protection, and made the Governor and the Superintendent of Public Instruction and the Attorney General ex-officio members of the board of directors; and then provided, by section 3 of the act that it should be the duty of the bureau to secure the enforcement of the laws of the state for the prevention of wrong to children and dumb animals, and to promote the growth of education and sentiment favorable to the protection of children and dumb animals. S. L. 1901, p. 191.

Notwithstanding that the Governor, Superintendent of Public Instruction and the Attorney General were made ex officio members of the board of directors, and that the bureau may be regarded, to some extent, as a public functionary, still, the bureau was permitted under the act to retain and exercise all of its ordinary powers theretofore exercised as a private corporation, and to pursue the charitable purposes for which the society was originally incorporated, as well as the purposes enumerated in the special act. The general object of the Colorado State Bureau for Child and Animal Protection was to secure the enforcement of the laws for the prevention of wrongs and cruelty to children and dumb animals, and to promote the growth of education and sentiment favorable to their protection. Such a society, organized under the laws of the state authorizing the incorporation of societies for charitable purposes, must be held to be a charitable organization. If this be so then our statute especially authorizes such a corporation to take, receive and hold gifts for charitable purposes. Section 2390, C. L. 1921, provides: "Domestic and foreign religious, educa-

tional, charitable and literary corporations or associations, operating within the state, may take by gift, devise or purchase, and hold real and personal property, and convey the same."

The rule is settled in this state that a corporation capable of taking and holding real estate is also capable of executing a charitable trust. *Clayton v. Hallett,* 30 Colo. 231, p. 249, 70 Pac. 429, 59 L. R. A. 407. So we think the Colorado State Bureau of Child and Animal Protection, designated as the beneficiary by paragraph nine of the will, is capable of taking and receiving the residuary estate of the testator, and of executing the charitable trust therein created.

The objectors insist that the request of the testator that care and attention be given to his dog Shep is a gift to a single dog, and that such a provision incorporated in the will invalidates the entire charitable bequest.

We cannot give our assent to this contention. The testator said, "* * * All I give and bequeath to the Colorado State Board of Child and Animal Protection * * * in affording relief to hungry, thirsty, abused and neglected cattle, horses, dogs and cats," * * * and "in prosecuting those who neglect animals or who abuse them." This language is definite and certain, and bequeaths the whole of the residuary estate, without any reservation whatsoever.

From the reading of the will and the record before us we think that the creation of a charitable trust in perpetuity, for the relief of dumb animals, was the all-controlling sentiment in the testator's mind. From 1889 until the time of his death, covering a period of nearly 40 years, he was an agent in the active work of this Humane Society, and, having no wife or children or immediate relatives, his time, attention and thoughts were centered in the humane work of relieving dumb animals from abuse and neglect. He knew that after his death his dog Shep, if living, would in all probability be a homeless dog, and in that event would be one of the dogs em-

braced within the general class of dogs to be benefited by the will, and when he made the "especially request" to the bureau with respect to his dog Shep, the "especially request" were merely precatory words. No fund was provided by the testator for his dog Shep. There was no estate left after the bequest of all the residuary estate to the bureau out of which a fund could have been created, and the testator evidently did not intend that there should be such a fund, for no attempt was made by him in the will to create one. The request for the dog Shep was the expression of a wish, a hope on behalf of a possibly homeless dog for care and attention, and was not intended to modify, cut down or nullify the gift of all the residuary estate to the bureau, for the relief of abused and neglected cattle, horses, dogs and cats. The words were precatory.

Counsel for the caveators further object to the request made by the testator for the erection of three drinking fountains for animals, and asserts that this provision in paragraph nine is too indefinite and uncertain to be carried into effect. The answer to this objection is that it is a mere request by the testator to the bureau. It is a precatory clause, and nothing more. It is a suggestion to the officers of the bureau that three drinking fountains erected downtown would be in furtherance of his charitable purposes of relieving thirsty and neglected dumb animals. The testator evidently had faith in the charitable corporation to which he had given all of the residue of his estate, to afford relief for the thirsty cattle, horses, dogs and cats, and he merely suggested to the bureau that the three drinking fountains downtown would in some measure work to that end. This construction is not in contravention of the main purposes of the bequest, but in perfect harmony with it. By this construction we give effect to all of the language in paragraph nine, thereby avoiding all repugnancy, which we are required to do, if possible, under well settled rules of construction. The New York Court of Appeals uses this

language: The rule appears to be well settled that "where one estate is given in one part of an instrument in clear and decisive terms, such estate cannot be taken away or cut down by raising a doubt upon the extent or meaning or application of a subsequent clause, nor by inference therefrom, nor by any subsequent words that are not as clear and decisive as the words of the clause giving that estate." *Roseboom v. Roseboom,* 81 N. Y. 356, 359.

With these expressions of our views on the assignments of error, the judgment of the court below will be and is affirmed.