## No. 13,000.

ESTATE OF SCHLEIER.

GREGORY *v.* COLORADO NATIONAL BANK ET AL.
(13 P. [2d] 273)

Decided July 5, 1932.

Mr. FRED S. CALDWELL, Mr. J. M. TAYLOR, for plaintiff in error.

Messrs. BARTELS & BLOOD, Mr. WALTER W. BLOOD, Mr. JAMES D. PARRIOTT, Mr. FRANK L. HAYS, Mr. CLARENCE L. IRELAND, Attorney General, Mr. ARTHUR OLSON, Assistant, for defendants in error.

*En Banc.*

MR. CHIEF JUSTICE ADAMS delivered the opinion of the court.

THIS case was brought by William J. Gregory, a nephew and heir at law of Rachel M. Schleier, deceased, to contest the validity of a portion of her will. The objection was overruled in the county court and the will in its entirety was admitted to probate. Gregory appealed to the district court with the same result; he prosecutes error to review the judgment.

The will first makes provision for the payment of debts and the distribution of numerous specific gifts, including one in the sum of $1,000 to Gregory, none of which are disputed. His objection goes to the seventh item, the residue clause of the will, which reads as follows:

"Seventh Item: I give, devise and bequeath to The Colorado National Bank of Denver, a national banking association doing business in the City and County of Denver, State of Colorado, and to my nephew, William J. Gregory, as trustees, without bond, and in the event of the death of the said William J. Gregory then to the Colorado National Bank of Denver as sole trustee, without bond, all of the rest, residue and remainder of my estate, real, personal and mixed, of every kind and character which I may own or have any interest in at the time of my death, including all lapsed legacies, in trust for the following uses and purposes, to-wit:

"I direct my said trustees to take over, manage, control and dispose of all of my said trust estate, as they may think best, without obtaining any order of court therefor, to collect and receive the rents, issues, income, dividends and profits thereof and pay their reasonable charges and

all taxes, assessments, repairs and expenses required to properly care for said trust estate, as well as all insurance premiums paid on policies insuring the improvements thereon against fire, accident or other casualties, and for the purpose of executing the trust created in this paragraph Seventh, I do hereby empower and authorize said trustees, or the survivor of them, to grant, bargain, sell, assign, transfer and convey the real and personal property constituting said trust estate, or any part thereof, to such person or persons and for such price or prices, and upon such terms and at such time or times as said trustees, in their uncontrolled discretion may think proper, and upon my said trustees having converted all of said trust estate into cash or securities I direct my trustees to use and pay over all of my trust estate as follows, to-wit:

"One-half (½) thereof I direct my trustees to pay over to such charitable institutions organized under the laws of the State of Colorado then operating in the City and County of Denver that are engaged in caring for children and/or for aged people as my trustees may select, my trustees to determine the amount to be paid to each of such charitable institutions. .

"And I direct my trustees to use and pay over the remaining one-half (½) of my said trust estate for the use and benefit of the City and County of Denver, in the State of Colorado, for the completion or beautification of the Civic Center in the City and County of Denver, or for the purchase of ground and/or the erection in whole or in part of buildings upon or near said Civic Center, all to be or become public property owned by said City and County of Denver. As it is difficult to determine at this time the best particular use of said one-half of my trust estate so given to the City and County of Denver, I wish to leave the matter to the discretion of my trustees, and I hereby empower my trustees to determine the particular use that shall be made of any part or all of said one-half of my trust estate, provided always it shall be

for the use and benefit of the City and County of Denver, and shall be approved by the City and County of Denver, and accepted by said City and County of Denver in memory of my late husband, George C. Schleier, and of myself, and also in memory of my sister, Mrs. Louis D. Riethmann, and her husband, L. D. Riethmann, both deceased."

In the eighth item, the testatrix appoints the Colorado National Bank of Denver and Gregory as executors without bond, and gives and grants to them all powers and authority thereinbefore conferred upon them as trustees of the trust estate.

Gregory asserts that the seventh item above quoted is void because of the rule against perpetuities, which question we shall consider.

The rule is defined in *Ould v. Washington Hospital,* 95 U. S. 303, at page 312, 24 L. Ed. 450, as follows: "A perpetuity is a limitation of property which renders it inalienable beyond the period allowed by law. That period is a life or lives in being and twenty-one years more, with a fraction of a year added for the term of gestation, in cases of posthumous birth."

The law against perpetuities has no application to public charitable gifts: *Clayton v. Hallett,* 30 Colo. 231, 70 Pac. 429; *Haggin v. International Trust Co.,* 69 Colo. 135, 169 Pac. 138; *Clarion v. Central Co.,* 71 Colo. 482, 208 Pac. 251; *In re Forrester's Estate,* 86 Colo. 221, 279 Pac. 721.

Our highest court in *Ould v. Washington Hospital, supra,* at page 311 of its opinion said:

"A charitable use, where neither law nor public policy forbids, may be applied to almost anything that tends to promote the well-doing and well-being of social man. Perry on Trusts, sect. 687.

"In the Girard Will Case, the leading counsel for the will thus defined charity: 'Whatever is given for the love of God, or the love of your neighbor, in the catholic and universal sense,—given from these motives and to these

ends, free from the stain or taint of every consideration that is personal, private or selfish.' Mr. Binney's Argument, page 41.''

And this court employed the following definition in *Clayton v. Hallett, supra,* at page 261 of the 30th Colorado reports: " 'A charity,' said Mr. Justice Gray, when of the supreme court of Massachusetts, 'in a legal sense, may be fully defined as a gift to be applied consistently with existing laws for the benefit of an indefinite number of persons, either by bringing their minds or hearts under the influence of education or religion, by relieving their bodies from disease, suffering or constraint, by assisting them to establish themselves in life, or by erecting or maintaining public buildings or works, or otherwise lessening the burdens of government.' ''

We say of the seventh item contained in Mrs. Schleier's will, as we said of the George W. Clayton gift, set forth in the case last mentioned: ''Here, then, is a public charity.''

■ A devise or bequest to charity is a favorite of the law and is liberally construed to make it effective. This principle is mentioned in some of the foregoing cases and followed in all of them. The General Assembly of this state recently gave further encouragement to liberality by the passage of an act with an emergency clause. Session Laws, 1927, page 737, chapter 195. We quote only the first section of the act; it reads as follows: ''Section 1. No gift, devise, bequest, transfer, grant or conveyance of real or personal property to religious, educational, charitable or benevolent uses, which shall in other respects be valid under the laws of this state shall be deemed invalid by reason of the indefiniteness or uncertainty of the persons designated as the beneficiaries thereunder in the instrument creating or constituting the same.''

■ The will under consideration is free from ambiguity, and we do not find it invalid in any respect as

to the seventh item, the only portion of the will of which complaint has been made.

We should hesitate to attempt, for use in all cases, a fixed definition of the term "public charity," lest by words of exclusion we might unintentionally seem to impose a legal restraint upon that cardinal grace which by its very nature thrives in proportion to the freedom of its proper exercise. Gifts to general public uses may extend to the rich as well as the poor. Bouvier's Law Dictionary (3d rev.), vol. 1, page 462. The statute of 43 Elizabeth, chapter 4 (see *Clayton v. Hallett, supra*), indicates charitable uses under the common law, which we follow, but the spirit of the act extends beyond parliament; it finds expression in the liberal interpretation repeatedly placed by the courts and legislatures upon charitable devises and bequests.

■ The following are some of the public charitable purposes for which provision was made in various wills that we have sustained in the cases above cited: The George W. Clayton College (Clayton v. Hallett). A Public library (Clarion v. Central Co.). An ornamental gate or arch at the Civic Center in Denver (Haggin v. Trust Co.). The protection of dumb animals (In re Forrester's Estate). One-half of Mrs. Schleier's residuary estate is to be devoted to the care of children and/or aged people; the other half for the completion and beautification of the Civic Center above mentioned, and/or other municipal purposes set forth in the seventh item of her will. The intentions of the testatrix are lawful and clearly expressed; we are not at liberty to interfere with her charitable designs in any respect, nor do we wish to do so.

■ Gregory claims that the gift was void because, it is said, it took effect in futuro. But we quote the following with our approval: "If the court, however, can see an intention to make an unconditional gift to charity (and the court is very keen-sighted to discover this intention), then the gift will be regarded as immediate, not

subject to any condition precedent, and therefore not within the scope of the Rule Against Perpetuities.'' Gray on the Rule Against Perpetuities (3d Ed.), page 483, §607. The postponement of the enjoyment of the gift does not postpone the vesting of title. 48 C. J. 947 [§16] B. The rights derived under the will vested upon the death of the testatrix; they were present fixed rights, only the enjoyment of which was postponed until the pro-visions of the will could be carried out. See *Miller v. Weston,* 67 Colo. 534, 538, 540, 189 Pac. 610. There is no expression in the present will to defer the vesting of title, an objection considered in the Miller case.

In *Robbins v. County Commissioners,* 50 Colo. 610, 115 Pac. 526, the commissioners were absolved from carrying out a bequest for public charity, because it imposed upon them as a condition precedent obligations beyond their constitutional and statutory powers, and for other reasons that distinguished the case from *Clayton v. Hallett, supra.* There is no such situation here.

The briefs, supplemented by oral argument, are able, exhaustive and display great research. Numerous excellently reasoned cases from other jurisdictions that support our conclusions have been cited; they comprise the great weight of authority, but we deem it unnecessary to enumerate them or to distinguish other cases, as this matter in its salient features is controlled by our former decisions. To the extent that other courts may differ with us (if they do) we must adhere to our own decisions, which we believe enunciate rules that are here applicable and are consonant with the interests of justice. This court is of the unanimous opinion that the judgment is right. It is accordingly affirmed.