FRANCES S. CLARKE, executrix, *vs.* INHABITANTS OF ANDOVER & others.

DOMESTIC AND FOREIGN MISSIONARY SOCIETY OF THE PROTESTANT EPISCOPAL CHURCH IN THE UNITED STATES OF AMERICA & others *vs.* ATTORNEY GENERAL & another.*

Essex.     November 1, 1910. — November 22, 1910.

Present: KNOWLTON, C. J., HAMMOND, LORING, SHELDON, & RUGG, JJ.

*Devise and Legacy*, What estate, Contingent remainder, "Or" construed to mean "and," Designation of legatee. *Trust. Executor and Administrator. Probate Court*, Jurisdiction. *Judgment. Equity Jurisdiction*, Bill for instructions. *Words*, "Or," "And."

A will contained the following provision: "I give to S. my adopted daughter the sum of $10,000; and to E., also my adopted daughter, $7,000; the income of which if not needed for their support, and schooling to be added to the principal during their minority; and at the age of twenty-one they to receive the income of the several amounts devised to them during the remainder of their lives; and sooner, if married before the age of twenty-one, at the time of said marriage; in case of the death of either of them before they come of age or are married, the said sum or sums to be appropriated for the establishment of an asylum in Andover for the benefit of orphans & indigent children under the direction of my trustees or executors; and in case of their death or the death of either of them, leaving children, the said amount to go to the said children." There were numerous legacies to relatives and friends of the testator, and residuary clauses disposing of all of his estate not otherwise disposed of. E. died when more than twenty-one years of age, never having married. *Held*, that by the will E. received only a right to income during her life, and in no event an absolute estate in any portion of the principal.

A will contained the following provision: "I give to S. my adopted daughter the sum of $10,000; and to E., also my adopted daughter, $7,000; the income of which if not needed for their support, and schooling to be added to the principal during their minority; and at the age of twenty-one they to receive the income of the several amounts devised to them during the remainder of their lives; and sooner, if married before the age of twenty-one, at the time of said marriage; in case of the death of either of them before they come of age or are married,

---

* The two cases were reserved for determination by the full court by *Morton*, J.

the said sum or sums to be appropriated for the establishment of an asylum in Andover for the benefit of orphans & indigent children under the direction of my trustees or executors ; and in case of their death or the death of either of them, leaving children, the said amount to go to the said children." There were numerous legacies to relatives and friends of the testator, and residuary clauses disposing of all his estate not otherwise disposed of. E. died when more than twenty-one years of age, never having married, S. in the meantime having died leaving children. *Held,* that the sums given in trust for E. and S. were to be disposed of independently of each other, and that the children of S. had no interest in the sum left in trust for E. and her children if she had any.

A will contained the following provision : "I give to S. my adopted daughter the sum of $10,000 ; and to E., also my adopted daughter, $7,000 ; the income of which if not needed for their support, and schooling to be added to the principal during their minority ; and at the age of twenty-one they to receive the income of the several amounts devised to them during the remainder of their lives ; and sooner, if married before the age of twenty-one, at the time of said marriage; in case of the death of either of them before they come of age or are married, the said sum or sums to be appropriated for the establishment of an asylum in Andover for the benefit of orphans & indigent children under the direction of my trustees or executors ; and in case of their death or the death of either of them, leaving children, the said amount to go to the said children." There were numerous legacies to relatives and friends of the testator, and residuary clauses disposing of all his estate not otherwise disposed of. E. died when more than twenty-one years of age, never having married. The trustees and executors named in the will were neighbors and personal friends of the testator. *Held,* that the words " in case of the death of either of them before they come of age or are married," should be construed to mean " in case of the death of either of them both before they become of age and before they are married," so that, E. having reached twenty-one years of age before her death, although she never married, the remainder for the establishment of an asylum in Andover never took effect.

A will contained a second clause, which set apart $7,000, the income of which was to be paid to the testator's adopted daughter, but made no provision for the disposition of the principal in case the adopted daughter died without ever having married and more than twenty-one years of age. A sixth clause of the will gave " the residue of " the property, " not exceeding $50,000," to a certain school, and the seventh clause provided, "If there should anything remain after satisfying the bequests before made, I order it divided " among certain institutions. The adopted daughter died when more than twenty-one years of age without ever having married. The $50,000 for the school had been provided for before her death. *Held,* that the sixth and the seventh clauses together constituted a general residuary clause, which included all property not effectually disposed of by the earlier parts of the will; and that the $7,000 in question passed to the institutions mentioned in the seventh clause.

A will left certain property to be divided " in equal parts, between the Foreign board of missions of the Episcopal church, the Domestic board of the same," and three other societies and corporations. The Foreign board of missions of the Episcopal church and the Domestic board of missions of that church are different departments under the charge of different committees as official managers of a corporation named the Domestic and Foreign Missionary Society of the Protestant Episcopal Church in the United States of America. Each of the committees has separate offices and separate treasuries and makes separate appeals to

the church, and each conducts its own affairs quite independently of the other. *Held*, that the corporation, the Domestic and Foreign Missionary Society of the Protestant Episcopal Church in the United States of America, should receive two fifths of the amount to be divided, and each of the other three societies and corporations should receive one fifth.

A trustee under a will, who held a trust fund for the purpose of paying the income thereof to a certain beneficiary during his life and thereafter to distribute it among certain societies and corporations, died after the life beneficiary without having distributed the principal. A successor was appointed, who died without having taken possession of the fund. Thereafter the Probate Court by a decree, which, upon petition by one of the ultimate beneficiaries under the will, this court held should be vacated because of lack of notice to certain parties, undertook to appoint a succeeding trustee. The executor of the will of the trustee who last had possession of the trust fund sought by a bill in equity instructions as to what disposition he should make of the fund, and this court, having determined the questions of construction of the will which were raised by the parties, directed such executor to distribute the fund accordingly, and *held*, that there was no occasion for the appointment of another trustee.

By the provisions of a will a certain fund was given to a trustee, the income to be paid to an adopted daughter of the testator for her life, and the principal after the beneficiary's death to be distributed among certain societies and corporations. After the death of the beneficiary, the trustee died without having distributed the fund, and thereupon without notice to the societies and corporations interested, but with notice only to the Attorney General of the Commonwealth and to a town which in a contingency that did not occur might have been interested, the Probate Court appointed a trustee to take over the fund from the executor of the will of the deceased trustee. One of the corporations entitled to the fund petitioned that the decree of appointment be vacated, and the executor of the deceased trustee filed a bill in equity for instructions as to the distribution of the fund. *Held*, that the decree of appointment, having been made without the notice to all persons interested required by R. L. c. 147, § 5, was made without authority and should be vacated, and *also*, that, because an order would go from this court to the Probate Court vacating the decree appointing the trustee at the same time with the order upon the bill for instructions, a decision could be made upon the bill for instructions in the same way as if there had been no attempted appointment of a new trustee, and that the executor of the deceased trustee, without a new trustee being appointed by the Probate Court, might distribute the trust fund in accordance with instructions given him.

Under St. 1891, c. 415, § 4, now incorporated in substance in R. L. c. 162, § 2, providing that " the probate courts shall be courts of superior and general jurisdiction with reference to all cases and matters in which they have jurisdiction," an erroneous decree of a probate court made in such a case stands until it is vacated or changed by that court.

KNOWLTON, C. J. Benjamin H. Punchard, late of Andover, deceased,* after giving devises and legacies to his wife, provided in the second clause of his will as follows: " I give to Sarah Elizabeth my adopted daughter the sum of ten thousand dollars; and to Ellen, also my adopted daughter, seven thousand dollars;

---

* The testator died in Andover in 1850.

the income of which if not needed for their support, and schooling to be added to the principal during their minority; and at the age of twenty-one they to receive the income of the several amounts devised to them during the remainder of their lives; and sooner, if married before the age of twenty-one, at the time of said marriage; in case of the death of either of them before they come of age or are married, the said sum or sums to be appropriated for the establishment of an asylum in Andover for the benefit of orphans & indigent children under the direction of my trustees or executors; and in case of their death or the death of either of them, leaving children, the said amount to go to the said children." In the third, fourth and fifth clauses he gave numerous legacies to relatives and friends and charitable corporations, and he began the sixth clause with these words: "The residue of my property, not exceeding fifty thousand dollars, I give and bequeath to the town of Andover for the purpose of founding a free school." Then follow directions in regard to the establishment and maintenance of this school, which are not material to the present case. The seventh clause is as follows: "If there should anything remain after satisfying the bequests before made, I order it divided in equal parts, between the Foreign board of missions of the Episcopal church, the Domestic board of the same, the American Bible Society, the American Sunday School Union, and the Seaman's Friend Society incorporated by the Legislature of New York in 1833."

The testator's adopted daughter Ellen died in 1892, never having married and being much more than twenty-one years of age. Her legacy has been in the hands of trustees, and the first of these cases is a bill brought by the executrix of the will of Amasa Clarke, who was the last survivor of the trustees who had the property in possession,* for instructions in regard to the disposition of the money which has come into her hands as his representative. The town of Andover, the corporations mentioned in the seventh clause, Maria Parker, an heir at law of Benjamin H. Punchard, the children of Sarah Elizabeth Punchard, and

---

* Amasa Clarke was appointed trustee on September 28, 1885, and died on October 26, 1907. One George A. Parker was appointed as trustee in his place on April 21, 1908, but died on August 19, 1908, without having taken possession of the trust fund. Ellen Punchard died on February 18, 1892.

Harry M. Eames who was appointed by the Probate Court as a trustee to succeed the latest deceased trustee, have been made parties defendant.

The interest of the adopted daughter Ellen in the $7,000 was only a life estate, with a creation of certain contingent remainders over. It was not an ownership in fee with an attempt to control the subsequent use and disposition of it by an inconsistent and void provision interfering with the rights of the owner. The whole language is to be construed together to ascertain the meaning of the testator, and it is plain that in no event was the daughter to have anything more than the income for life. The remainder over was to go as prescribed, upon the happening of one or the other of certain contingencies, and if neither of them happened it was left undisposed of. *Wynn* v. *Bartlett,* 167 Mass. 292. *Ware* v. *Minot,* 202 Mass. 512. *Dow* v. *Abbott,* 197 Mass. 283. *Stearns* v. *Stearns,* 192 Mass. 144. *Loomis* v. *Gorham,* 186 Mass. 444.

The moneys given to the adopted daughters were separate funds, and no cross-remainders were created. Each was to be disposed of independently of the other. While the same methods of disposition are prescribed for each, the takers of a remainder upon the happening of a contingency, take only under the language applicable to the separate fund, and not by reason of any relation of the funds to each other. The children of Sarah Elizabeth Punchard have no interest in this fund.

The question most discussed is whether, to give the remainder effect for the establishment of an asylum in Andover, the death of Ellen must occur before the happening of either of the events referred to, whichever might happen first, namely, her coming of age, or her marriage, so that the happening of either before her death would defeat the remainder without the happening of the other before her death, or, whether the remainder would vest on her death unless she had both come of age and been married before that time. We are of opinion that it was only in case her death before either event happened that this remainder was to take effect, so that if she came of age or was married before her death the money was not to be appropriated to this charitable use. Provision was made for the payment of the income directly to the life tenant on her arrival at the age of twenty-

one years, or on her marriage before reaching that age. The happening of either event fixed the right to receive the payments of the income. Then followed the language in question, that in case of death before the happening of one or the other of these events, whichever happened first, the remainder was to go over in the manner stated. This was, in substance, that in case of her death before the income became payable to her by reason of the happening of one of these events, the remainder was to go over. This disposition of the remainder evidently had reference to the use of it in case she needed the income only for a short time for her support or education, not to the founding of an asylum after her death unmarried in extreme old age, when conditions in the neighborhood might have entirely changed. The asylum, too, is to be established under the direction of the testator's trustees or executors. These were his neighbors and personal friends, and seemingly he expected the asylum to be established by them personally, soon after his death, if there was occasion to establish it at all. If, as is contended by the defendant Eames and the town of Andover, the remainder over would take effect unless the death of the legatee occurred after reaching the age of twenty-one years, and also after having married, she might marry and die leaving children before arriving at that age, in which case, *ex hypothesi*, the remainder would be appropriated for the establishment of the asylum. But this result would be contrary to the other provision, that upon her death leaving children the amount should go to them.

A construction like that which we adopt has been put upon similar language in many cases, both in this Commonwealth and elsewhere, and it has often been held that the word " or " will be construed to mean " and " when this seems necessary to give effect to the meaning of the testator. *Carpenter* v. *Heard*, 14 Pick. 449. *Hunt* v. *Hunt*, 11 Met. 88. *Parker* v. *Parker*, 5 Met. 134. *Barker* v. *Suretees*, 2 Stra. 1175. *Miles* v. *Dyer*, 5 Sim. 435. *Thackeray* v. *Hampson*, 2 Sim. & Stu. 214. *Weddell* v. *Mundy*, 6 Ves. 341. *Hasker* v. *Sutton*, 1 Bing. 500.

As the contingency on which the remainder would vest has not happened, the amount was not disposed of, unless by the residuary clause of the will. The sixth clause assumes to deal with all the residue, but appropriates only $50,000 of it if the amount

should exceed that sum.  The amount is more than that, and we come to the seventh clause, which disposes of anything that might remain after satisfying all the previous bequests.  These two clauses together constitute a general residuary clause, which includes lapsed legacies and all property not effectually disposed of by earlier parts of the will.  *Thayer* v. *Wellington*, 9 Allen, 283.  *Wynn* v. *Bartlett*, 167 Mass. 292.  *Gill* v. *Attorney General*, 197 Mass. 232.  It follows that the fund in the hands of the plaintiff is to be divided in accordance with the provisions of the seventh clause of the will.

It appears that the Foreign board of missions of the Episcopal church and the Domestic board of the same are different departments, under the charge of different committees as official managers of the Domestic and Foreign Missionary Society of the Protestant Episcopal Church in the United States of America, a corporation.  " Each of these committees, during the period mentioned, had separate offices and separate treasuries, and made separate appeals to the church, and each conducted its own affairs quite independent of the other. . . . Each committee had its own books and offices and clerks, and elected its own separate secretaries and treasurers and other officers, and for many years the offices of the two committees were in different buildings."  Each of these organizations is entitled to receive the same share of the fund under the residuary clause as each of the three corporations mentioned in that clause; and as each of them was maintained as an agency in the work of the Domestic and Foreign Missionary Society and was owned and controlled by this corporation, it follows that this corporation should receive two fifths of the amount to be divided, and that each of the other corporations should receive one fifth.

The other case is an appeal from a decree of the Probate Court dismissing a petition to vacate the decree appointing Harry M. Eames a trustee under the will of Benjamin H. Punchard, to receive the money in the hands of Frances S. Clarke, executrix of the will of Amasa Clarke, a former trustee.  It appears that the appointment was made without notice to any of the parties who are now found to be interested in the fund, notice having been given only to the Attorney General and the officers of the town of Andover.  The statute applicable to such cases re-

quires that notice of the proceedings for the appointment shall be given to all persons interested. R. L. c. 147, § 5. *Shaw* v. *Paine*, 12 Allen, 293. The decree of appointment was made without authority, and the petition to vacate it should have been granted. *Gale* v. *Nickerson*, 144 Mass. 415. *Crocker* v. *Crocker*, 198 Mass. 401. *Phillips* v. *Chase*, 201 Mass. 444. Since the Probate Court is now a court of superior and general jurisdiction, (St. 1891, c. 415, § 4, R. L. c. 162, § 2,) the irregular appointment of Mr. Eames as a trustee must be corrected in that court and previous decisions to the contrary are no longer applicable. As an order upon the petition will go from this court vacating the decree of appointment at the same time with the order for a decree upon the bill for instructions, a decision can be made in the first case, in the same way as if the appointment had not been made. There is no occasion for the appointment of another trustee, but the money can be finally disposed of under a decree in this suit.

In the first case there will be a decree for the distribution of the fund among the parties mentioned in the seventh clause of the will, and in the second case there must be a decree for the petitioner.

*So ordered.*

*H. Wheeler*, for the plaintiff, stated the case.

*D. Malone*, Attorney General, *& F. T. Field*, Assistant Attorney General, for the Attorney General, submitted a brief.

*H. S. Davis*, for the Domestic and Foreign Missionary Society of the Protestant Episcopal Church in the United States of America and the American Bible Society.

*W. I. Nottage*, for the American Seaman's Friend Society.

*L. W. Cleaveland* (of Connecticut), for the American Sunday School Union.

*W. Rand*, for Maria Parker.

*A. F. Converse*, for the town of Andover and Harry M. Eames, trustee.