ANNIE M. MITCHELL *vs.* JEREMIAH H. MITCHELL & another.

Norfolk.   April 9, 10, 1942. — September 8, 1942.

Present: FIELD, C.J., DONAHUE, DOLAN, COX, & RONAN, JJ.

*Probate Court,* Jurisdiction, Parties, Vacation of decree, Guardianship, Sale of real estate. *Spendthrift. Guardian,* Of spendthrift. *Real Property,* License to sell. *Jurisdiction,* Improper exercise of jurisdiction. *License. Statute,* Construction.

Section 8 of G. L. (Ter. Ed.) c. 201 does not authorize a Probate Court to appoint a guardian of an alleged spendthrift upon a petition by the spendthrift or his attorney.

The general jurisdiction of a Probate Court of the appointment of guardians under G. L. (Ter. Ed.) c. 215, §§ 2, 3, does not give it power to appoint a guardian of an alleged spendthrift upon a petition by one not authorized by c. 201, § 8, nor power to license a guardian, appointed upon such a petition, to sell the spendthrift's real estate.

Lack of power of a Probate Court to appoint a guardian of an alleged spendthrift upon a petition by one not authorized by G. L. (Ter. Ed.) c. 201, § 8, or to license a guardian, appointed on that petition, to sell the spendthrift's real estate, was not cured by the fact that the petitions for appointment and for the license were assented to by the spendthrift's husband, by the spendthrift herself, and by the public welfare official of her municipality.

In the circumstances, vacation of unauthorized decrees of a Probate Court appointing a guardian of an alleged spendthrift and granting a license to the guardian to sell the spendthrift's real estate must be without imposing liability upon the guardian for acts done before the vacation or upon the purchaser of the real estate or his privies.

In enacting a statute, the Legislature must be held to be familiar with the construction given by this court to the predecessors of such statute.

An assent by a public welfare official to a petition for the appointment of a guardian of an alleged spendthrift did not make the official a petitioner within G. L. (Ter. Ed.) c. 201, § 8.

PETITION to vacate, filed in the Probate Court for the county of Norfolk on March 19, 1941.

The case was heard by *Reynolds,* J.

*W. J. Geegan,* (*L. J. Rouleau* with him,) for the petitioner.

*E. M. Dangel,* (*L. E. Sherry & H. Pavan* with him,) for the respondent.

Cox, J. This is an appeal from a decree of the Probate Court dismissing a petition to vacate two decrees of that court, one appointing a guardian of the petitioner as a spendthrift, and the other granting a license to the guardian so appointed to sell the petitioner's real estate. From the report of material facts (G. L. [Ter. Ed.] c. 215, § 11), it appears that the respondent Louis A. George, on March 9, 1938, filed a complaint or petition dated March 4, 1938, in the Probate Court, alleging, in substance, that, in his judgment, Annie M. Mitchell of Quincy (who was then confined in one of our hospitals for the insane) was, in effect, a spendthrift, and praying that he be appointed her guardian. He signed the petition as "Attorney for Annie M. Mitchell." See *O'Neil* v. *Glover,* 5 Gray, 144, 157. The petition contained the assents of said Annie M. Mitchell, of her husband (the respondent Mitchell), and of the "Commissioner of Public Welfare in the City of Quincy, Anthony J. Venna." See G. L. (Ter. Ed.) c. 215, § 47. It was allowed on March 9, 1938, and the guardian's bond was approved on March 11, 1938. A libel for divorce against Mrs. Mitchell was then pending in that court, and George was counsel for the libellee in the divorce proceedings. On March 14, 1938, George filed a petition for license to sell his ward's real estate, and a license therefor issued on March 16, 1938, but because of some defect in form this license was revoked, and, upon a new petition, a license for the sale of the real estate was issued on April 11, 1938. Both of these petitions were assented to by the said Annie M. Mitchell, by her husband and by said commissioner of public welfare. No citation issued on the petition for the appointment of the guardian or on the two petitions for license to sell real estate, and no waiver of notice by the department of mental "Diseases" was filed.

Prior to these proceedings, the respondent Mitchell had made application to a judge of a District Court on August 27, 1936, for the commitment of his wife for observation to

an institution for the insane, and the judge ordered her committed for that purpose on August 28, 1936. The assistant superintendent of the hospital to which she was committed reported on September 21, 1936, that in his opinion Mrs. Mitchell was suffering from alcoholic psychoses, and that in his opinion she was insane. (See G. L. [Ter. Ed.] c. 123, § 77.) On September 23, 1936, the judge of the District Court entered an order committing the petitioner, subject to the provisions of G. L. (Ter. Ed.) c. 123, § 77. From August 28, 1936, to May, 1941, Mrs. Mitchell was confined in the State hospital, although she was released "on visit" four different times. The report states that she has never been discharged from the State hospital. She was "on visit" from July 19, 1937, until February 26, 1938, when she was returned to the hospital, and remained there until July 27, 1938, when she was released again "on visit." The judge in the case at bar found that Mrs. Mitchell's mental disturbance occurred only after the excessive consumption of alcohol; that when alcohol was eliminated from her diet, she became normal; that her return to the hospital after four extended visits was in each instance due to the excessive use of alcoholic liquor; that while she was confined at the hospital, there were periods when she was insane and many periods when she was normal in all respects; and that she was insane from February 26, 1938, to March 5, 1938.

Mrs. Mitchell first consulted George as an attorney relative to the sale of her real estate in January, 1938. At that time she had been "on visit" from the hospital since July 19, 1937. Subsequently, George held at least two conferences with his client at the hospital relative to the guardianship petition and the petitions for license to sell the real estate, and these conferences were held with Mrs. Mitchell during her lucid intervals. The judge found specifically that Mrs. Mitchell was normal, "inasmuch as she had sufficient mental capacity to understand the nature of her acts when she assented to the petition for the appointment of a guardian and when she assented to the two petitions for license to sell her real estate." Acting at the request of

Mrs. Mitchell, George, as guardian, consummated the sale of her real estate. The buyer was secured, and preliminary negotiations were made by her. The net proceeds of the sale exceeded the appraised value of the real estate. There was no evidence of fraud or conspiracy on the part of the respondents, and no evidence that Mrs. Mitchell suffered any damage. She was fully informed by George as to every step that was taken, and also as to the decrees that were entered by the judge. She understood the legal proceedings and knew what her rights were. George tendered his resignation as guardian on June 14, 1939, when it was accepted. At the same time he filed his first account as guardian, which is still pending. The petitioner's conservator was appointed on June 28, 1940, on a petition filed by the department of mental health for the Commonwealth.

The petitioner contends that the judge of probate was without jurisdiction to appoint the guardian or to decree that the license issue for the sale of the real estate.

General Laws (Ter. Ed.) c. 201, § 8, provides that a person who, by excessive drinking, gaming, idleness or debauchery of any kind, so spends, wastes or lessens his estate as to expose himself or his family to want or suffering, or any town to charge or expense for his support or for the support of his family, may be adjudged a spendthrift. "The board of public welfare of the town of which he is an inhabitant or resident, or upon which he is or may become chargeable, or a relative of the alleged spendthrift, may file a petition in the probate court, stating the facts and circumstances of the case and praying that a guardian· be appointed." In towns where selectmen act as the board of public welfare, they may file such petition. "If after notice . . . [to the alleged spendthrift and, if she is a married woman, to her husband], and after hearing, the court finds that he is a spendthrift, it shall appoint a guardian of his person and estate." The first provision relating to this subject matter is found in St. 1783, c. 38. There has been little, if any, change in the Legislature's definition of a spendthrift from that day to this. By the provisions of said St. 1783, c. 38, when any person by excessive drinking,

gaming, idleness or debauchery of any kind, shall so spend, waste or lessen his or her estate, as thereby to expose himself or herself, or his or her family, or any of them to want or suffering circumstances, or shall by thus spending, wasting, or lessening his or her estate, endanger or expose the town to which he or she belongs, in the judgment of the selectmen thereof, to a charge or expense for the maintenance or support of him or her, or his or her family, or any of them, such selectmen, or the major portion of them, shall, in such case, lodge a complaint with the judge of probate, and if it shall appear that the person complained of comes within the description of the act and has had due notice of the complaint, then the judge of probate shall appoint said selectmen or the major portion of them, or some suitable and discreet person or persons guardian or guardians to such person. Some changes have been made in the law from time to time. The mayor and aldermen were at one time added to the selectmen as possible complainants or petitioners. Gen. Sts. c. 109, § 9. Statute 1897, c. 173, made provisions that the complaint or petition might be made by the overseers of the poor of the city or town, or by a relation or relations of the alleged spendthrift. The reason for the substitution of the board of public welfare for overseers of the poor in the present statute may be found in St. 1923, c. 26, and St. 1931, c. 426, § 156.

The provisions of St. 1783, c. 38, dealing with the appointment of guardians of spendthrifts were considered by Shaw, C.J., in the case of *Norton* v. *Leonard*, 12 Pick. 152, 160, 161. It was there said that the power given by the statute to institute these proceedings was vested exclusively in the selectmen "for the time being," and that the judge of probate could not either *proprio vigore*, or upon the application of heirs, children or friends, institute these proceedings or obtain the appointment of a guardian, and that the authority was given to selectmen, not as agents of towns, but as high public officers, "selected for their prudence and discretion." In *Lynch* v. *Dodge*, 130 Mass. 458, it was said that the purpose for which spendthrifts are put under guardianship is indicated by the provision of the statute authoriz-

ing the complaint to the "Probate Court, which is the first step in the proceedings, to be made by the mayor and aldermen or the selectmen of the city or town" of which such spendthrift is an inhabitant or resident, or upon which he is or may become chargeable. In *Bond* v. *Bond*, 2 Pick. 382, Parker, C.J., in speaking of St. 1783, c. 38, saw no reason for questioning its constitutionality, and, at page 384, it was said: "We apprehend that the government have always a right to protect the property of citizens for the benefit of themselves and their families, and of the community. Here the people have deputed their power to the Judge of Probate, and the appointing of a guardian by him is not taking away the spendthrift's property, but preserving it to him for his own use." After the substitution in G. L. c. 201, § 8, of the words "a relative" for the words "a relation or relations" contained in St. 1897, c. 173 (see St. 1907, c. 169, § 2), the question arose in *Dexter* v. *Dexter*, 283 Mass. 327, whether a decree appointing a guardian of a spendthrift upon the petition of the alleged spendthrift's wife was unauthorized and void. The alleged spendthrift assented to the allowance of the petition. It was there held that the spendthrift's wife was a relative within the meaning of the statute. It was said, at page 329: "Public officers alone were authorized to petition for the appointment of a guardian of a spendthrift prior to the enactment of St. 1897, c. 173, whereby 'a relation or relations' also were so authorized . . . The substitution of 'a relative' for those words in G. L. c. 201, § 8, was a mere verbal change making no alteration in the substance of the statute." And on pages 330–331 it was said: "The purpose of the enactment of St. 1897, c. 173, manifestly was to enlarge the class of persons who might petition for the appointment of a guardian of a spendthrift." And on page 332 it was said: "Since the petitioner in the present case [the petition being for revocation of the decree appointing the guardian] cannot prevail, there is no objection to stating the grounds of substantive law leading to that result without considering whether she may be barred on procedural or other grounds."

Our attention has been called to no case where an alleged

spendthrift or his attorney has petitioned for guardianship. Upon reflection, there would seem to be no good reason why the spendthrift ought not to be permitted to do so. But for some reason the Legislature did not include him as one who might petition. A minor, if above the age of fourteen, may nominate his own guardian, who if approved by the court, shall be appointed. G. L. (Ter. Ed.) c. 201, § 2. If a person, by reason of advanced age or mental weakness, is unable properly to care for his property, the Probate Court may, upon his petition, or upon the petition of one or more of his friends, after notice and hearing, appoint a conservator to have charge and management of his property, subject to the direction of the court. G. L. (Ter. Ed.) c. 201, § 16. A temporary conservator may be appointed upon the petition of a person of advanced age or mental weakness or of a friend. G. L. (Ter. Ed.) c. 201, § 21. These provisions appearing in the same chapter of the General Laws with the provision for the appointment of a guardian of a spendthrift cannot be ignored. It well may be that the Legislature has never considered that a person coming within the statutory definition of a spendthrift would himself ask the court for the appointment of a guardian. It well may have been thought that there was a distinction between a person who, by reason of advanced age or mental weakness, was unable properly to care for his property and a person who, by excessive drinking, gaming, idleness and debauchery of any kind, was spending and wasting his estate.

Probate Courts are courts of superior and general jurisdiction with reference to all cases and matters in which they have jurisdiction, G. L. (Ter. Ed.) c. 215, § 2, and, among other things, they have jurisdiction of the appointment of guardians and conservators. G. L. (Ter. Ed.) c. 215, § 3. See *Paige* v. *Sinclair*, 237 Mass. 482, 484. But the powers of Probate Courts are, for the most part, defined and vested by statutes. *Lord* v. *Cummings*, 303 Mass. 457, 459. They have no power in the exercise of this general jurisdiction to appoint a guardian of an alleged spendthrift, except as that power is found in G. L. (Ter. Ed.) c. 201, § 8,

and we are of opinion that they have no power to entertain a petition for such an appointment unless it is brought by some of the persons named in that section. This case calls for an interpretation of § 8 of said c. 201. The intent of the Legislature is to be ascertained from its several parts and all of its words under the familiar rule. *Dexter* v. *Dexter,* 283 Mass. 327, 330. There are no words in the section that can be construed as giving the alleged spendthrift a right to petition for guardianship. "A statute cannot be extended by construction or enlargement beyond its fair import. If it does not reasonably include a right of action, none can be implied. The argument of hardship or unintentional omission is not enough." *Martinelli* v. *Burke,* 298 Mass. 390, 392. See *Thacher* v. *Secretary of the Commonwealth,* 250 Mass. 188, 190. It is unnecessary to consider whether the Legislature ever thought that an alleged spendthrift should have the right to petition for the appointment of a guardian, nor is it necessary to consider whether the failure to provide for such petition was due to accident or inadvertence. If the omission was intentional, no court can supply it. If the omission was due to inadvertence, an attempt to supply it by including the omitted case would be tantamount to adding to a statute a meaning not intended by the Legislature. This is not a case where any intent on the part of the Legislature to incorporate the omitted case can be ascertained with a reasonable degree of certainty under the rule applicable to the interpretation of statutes.

It may be contended that the language of said § 8 is permissive as to who may file the petition. The legislative history and the decisions already referred to, however, seem to indicate that this is not so. The Legislature must be held to have been familiar with the construction that this court had given to the predecessors of this section. If it had been intended to permit an alleged spendthrift to file a petition, it would have been as easy to have said so as it was to provide that a person who, by reason of advanced age or mental weakness, is unable properly to care for his property, may petition for the appointment of a

conservator. When the Legislature was extending the scope of the law by providing that a relation, and later, a relative, might file the petition, it might have provided that the alleged spendthrift himself might also petition. We think it apparent that the proceeding has been regarded by the Legislature as an adversary one, *Norton* v. *Leonard*, 12 Pick. 152, 162, and, this being so, it is not altogether consistent to think of the person against whom the proceeding is directed as being one who could institute it.. See *Merriam* v. *Sewall*, 8 Gray, 316, 322, 323; *Assessors of Boston* v. *Suffolk Law School*, 295 Mass. 489, 493, 494, and cases cited; *Cullen* v. *Mayor of Newton*, 308 Mass. 578, 580, 582.

The language of said § 8 is not quite as decisive as that of G. L. (Ter. Ed.) c. 246, § 1, which permits all personal actions, "except" those specifically mentioned, to be commenced by trustee process. It has been held that the express prohibition contained in the statute just referred to goes to the validity of the action, and to the jurisdiction of the court, and that this invalidity cannot be cured by amendment. *Poorvu* v. *Weisberg*, 286 Mass. 526, 537, and cases cited. Where, as here, the Legislature has prescribed the method of procedure, we are of opinion that it is a prerequisite to the exercise of the jurisdiction of the court that that method be followed. *Clarke* v. *Andover*, 207 Mass. 91, 97, 98. *Gallagher* v. *Sullivan*, 251 Mass. 552, 555. See *Assessors of Boston* v. *Suffolk Law School*, 295 Mass. 489, 493, 494, and cases cited.

The fact that the commissioner of public welfare of Quincy assented to the petition does not, in our opinion, constitute him the petitioner. The high and important duty imposed upon the board of public welfare, see *Norton* v. *Leonard*, 12 Pick. 152, 160, requires a petition by them "stating the facts and circumstances of the case." No such petition was filed. Perhaps the same could be said of the assent on the part of Mrs. Mitchell as constituting her the petitioner.

If there were nothing more to the case than the appointment of the guardian, it would be unnecessary to consider it, inasmuch as the guardian's resignation has been accepted.

But following his appointment, he was licensed to sell Mrs. Mitchell's real estate. The sale was made, and it appears that the guardian's account is now pending. General Laws (Ter. Ed.) c. 202, § 12 (see now St. 1941, c. 194, § 17) provides that no such license shall be granted unless notice of the petition therefor has been given to the board of public welfare of the town where the spendthrift resides, or, in the case of an insane person, to the department of mental health. The commissioner of public welfare assented to the petition (see G. L. [Ter. Ed.] c. 215, § 47), but apparently no notice issued to the department of mental health. We are of opinion, however, that the findings of fact warrant the conclusion that no notice to the department of mental health was required, for the reason that the judge who granted the license must have found that Mrs. Mitchell was not insane.

It is true that the court has general jurisdiction of the appointment of guardians, but this jurisdiction as to spendthrifts can be exercised only in the manner provided by said § 8. Probate Courts have jurisdiction of petitions for the adoption of children. G. L. (Ter. Ed.) c. 215, § 3. In *Davis* v. *McGraw*, 206 Mass. 294, where a living wife did not join in a petition of her husband for the adoption of a child, it was held, at page 298, that the joinder of the wife was a condition precedent to the power of the court to consider the case, and that, the court not having jurisdiction, the decree was absolutely void and "of itself" furnished no protection to any one acting under it, even though acting in good faith, citing *Jochumsen* v. *Suffolk Savings Bank*, 3 Allen, 87. See *Lee* v. *Wood*, 279 Mass. 293, 295–296. In the case of *Jones* v. *Jones*, 223 Mass. 540, it was pointed out that the Probate Court had jurisdiction of the fund that it ordered paid to persons not entitled thereto. This jurisdiction came under a will that had been proved and allowed. The decree ordering payment of the fund was premised upon the assumption that the legatee entitled to the fund had died, when, in fact, he was living. It was held, at page 542, that the judge had jurisdiction over the fund, but that he made an erroneous exercise of it, and that

in such a case the decree could be corrected, but that it was not void from the beginning. The decree ordering payment was vacated, and the petitioner's right to the fund was established, but no liability was imposed on the bank for paying over the fund as directed by the order of the court.

Where, as here, the Probate Court had general jurisdiction of the subject matter (G. L. [Ter. Ed.] c. 201, § 1; c. 215, § 3), we are of opinion that the case is within the rule stated in the *Jones* case, *General Investment Co.* v. *New York Central Railroad*, 271 U. S. 228, 230, 231, and that it is distinguishable from the *Jochumsen* case. In the *Jochumsen* case the court never had jurisdiction because there was no "deceased person." Whether there was such person was a jurisdictional fact which had to be determined before there was any jurisdiction at all. See G. L. (Ter. Ed.) c. 215, § 3.

The conclusion here reached is not in conflict with the case of *Davis* v. *McGraw*, 206 Mass. 294. Under G. L. (Ter. Ed.) c. 215, § 3, the Probate Court has jurisdiction of "petitions" for the adoption of children. The jurisdiction as to guardians is "of the appointment of guardians." Under G. L. (Ter. Ed.) c. 210, § 1, if the person who may "petition" for adoption has a husband or wife living competent to join in the petition, he or she shall join therein. The case of *Davis* v. *McGraw* is distinguishable on the facts. In that case the Probate Court itself had revoked the decree of adoption which it had previously entered.

The decrees appointing the guardian and ordering the license to issue for the sale of the real estate should not have been entered and must be vacated, but without imposing liability upon the guardian for any acts prior to the date of entry of the vacation decrees and without imposing any liability upon the purchaser or purchasers of the real estate sold under the license or their privies. *Jones* v. *Jones*, 223 Mass. 540. *Knowles* v. *Perkins*, 274 Mass. 27, 33.

*Ordered accordingly.*