No. 16,085.

SMITH ET AL. *v.* UNITED STATES NATIONAL BANK OF DENVER, EXECUTOR.

(207 P. [2d] 1194)

Decided June 13, 1949.

Messrs. SILVERSTEIN & SILVERSTEIN, for plaintiffs in error.

Mr. JACKSON M. SEAWELL, Mr. ROBERT E. MORE, for defendant in error.

Mr. H. LAWRENCE HINKLEY, Attorney General, Mr. DUKE W. DUNBAR, Deputy, Mr. FRANK A. WACHOB, Assistant, for the State of Colorado and all unknown beneficiaries under the will of Helen Dean Yetter, deceased.

*En Banc.*

MR. JUSTICE JACKSON delivered the opinion of the court.

THIS case involves the interpretation of a will. It arose when the heirs-at-law (nieces, nephews and one grandnephew), of Helen Dean Yetter filed a caveat to paragraphs 3 and 4 of her will, which had previously been offered for probate by the United States National Bank of Denver, named as executor under the will. No contention was made that the will was not properly executed, and there was no objection to paragraph 1 of the will directing that all just debts be paid, nor to paragraph 2 which provided for certain specific bequests to various beneficiaries including some of the caveators. Paragraphs 3 and 4 of the will, against which the caveat was filed, disposed of the residuary estate purporting to create a trust for charitable purposes with the bank named as trustee. After a hearing on the caveat, the trial court entered a judgment denying the relief prayed for, admitting the will to probate, and letters testamentary were issued to the Bank.

The will reads as follows:

"I, Helen Dean Yetter, being of sound mind and memory, do hereby revoke all former Wills by me made and do make, publish and declare this to be my Last Will and Testament in the manner following, that is to say:

"1. I direct that all my just debts be paid.

"2. a) I give and bequeath the sum of Five Hundred Dollars ($500.00) each to the following named persons:

Ruth Barrett Smith
William Armour Dean
Paul Dean
Dorothy Dean Sine
Ulah Renner Winston
Mrs. Chellie M. Wright
Dorothy Jane Yetter
Edgar Stapper
Grace Stapper
Edith Rockwell.

"b) I give and bequeath the sum of Fifteen Hundred Dollars ($1500.00) each to Blanche Cooper and James Carruthers, and the sum of Five Hundred Dollars ($500.00) to Elizabeth Sanders, all of whom have been faithful, attentive and loyal domestic employees of mine.

"c) I give and bequeath the sum of Three Thousand Dollars ($3000.00) each to the following, in recognition of their faithful service as business associates:

Herbert C. Brown
Samuel E. Agnew
Jackson M. Seawell
Esten H. Cook

and the sum of One Thousand Dollars ($1000.00) to James E. Neff and the sum of Seven Hundred Fifty Dollars ($750.00) to Grace E. Starbird.

"d) I give and bequeath to all employees of The Western Elaterite Roofing Company, a Colorado corporation, including shingle salesmen operating under that corporation's regular dealers' agreements, who are employees on the date of my demise, and who have been regularly employed (giving due regard for the seasonal nature of their work) by said corporation for four years or more, the sum of Two Hundred Fifty Dollars ($250.00) each, and to all other regular employees (giving due regard for the seasonal nature of their work) of said corporation, who are employees on the date of my demise, the sum of Fifty Dollars ($50.00) each for each year or greater part of a year they have

been so employed by said corporation, provided that Herbert C. Brown, Samuel E. Agnew, Jackson M. Seawell, Esten H. Cook, James E. Neff, and Grace E. Starbird shall not take anything under this sub-paragraph d), but shall be limited to the specific bequests to each as set forth above in sub-paragraph c).

"e) I give and bequeath the sum of Five Thousand Dollars ($5000.00) each to the Mother Church of Christ, Scientist, in Boston, Massachusetts, and The Colorado Woman's College of Denver, Colorado.

"3. In accordance with the plans and wishes of my late beloved husband, Edward J. Yetter, I give, devise and bequeath all of the rest and residue of my property, real, personal and mixed, wherever situate and of whatever kind or nature, to The United States National Bank of Denver, Colorado, in trust, upon the following uses and trusts, to-wit:

"a) There is hereby established in perpetuity the Edward Joseph Yetter and Helen Dean Yetter Foundation, and this trust shall be so known and administered in perpetuity.

"b) To invest and reinvest the trust funds from time to time, without restriction as to the kind or character of property in which such investments shall be made, and regardless as to whether or not such investments are those specifically authorized for trustees under the statute laws of Colorado or of any other states to which the administration of my estate may be subject; and the trustee shall not be liable for any loss in any investment made by it except in cases where it would have been liable had the investment been one authorized by statute.

"c) To retain, without liability for loss or depreciation resulting from such retention, original property, real or personal, at any time received by it from the executor for such time as to it shall seem best, although such property may not be of the character prescribed by law or by the terms of this instrument for the in-

vestment of other trust funds and although it represents a large percentage of the total property of the trust estate; and to dispose of such original property by sale or exchange or otherwise as and when it shall deem advisable and receive and administer the proceeds as a part of the trust estate; and, if non-income-producing property is retained, then upon the sale, exchange, or other disposition of such property, to make a reasonable apportionment of the proceeds between income and principal so as to make up for the loss of income during the period of retention of the unproductive property.

"d) To continue and operate any private business owned by me at the time of my death and to do any and all of the things deemed appropriate by my executor or trustee, as the case may be, including the right to incorporate the business and to put in additional capital, for such time as to it shall seem advisable, without liability for loss for the continuance of the business; and to close out and liquidate the business as and when it shall seem advisable and upon such terms as to it shall seem best. In the conduct of the Western Elaterite Roofing Company I direct that, should the trustee employ a General Manager, he should be a man of high morals, integrity and executive ability; he should not be actively engaged in the practice of law, accountancy or banking, nor should he be a salesman or a politician.

"e) To vote any corporate stock belonging to the trust estate through its officers or by proxy, with or without power of substitution, and to execute proxies to one or more nominees.

"f) To lease any real property that at any time may form part of the trust estate under such terms and conditions and for such a period as to it shall seem best; and to renew, cancel, amend, or extend and consent to the assignment or modification of any lease on any terms that may be deemed by it to be for the best interest of the trust.

"g) To set up reserves out of income for taxes and

assessments of all kinds and repairs and general upkeep of buildings.

"h) To determine what is income and what is principal hereunder, and its decision with respect thereto shall be final.

"i) To determine what expenses, costs, taxes and charges of all kinds shall be charged against income and what against principal, and its decision with respect thereto shall be conclusive upon all parties.

"j) To treat as principal or as income or partly as one and partly the other, as to it shall seem best, all realized appreciation in the value of stocks and bonds, securities, or other property forming a part of the trust estate, resulting from the sale or other disposition thereof, and its decision with respect thereto shall be conclusive upon all parties.

"k) To treat stock dividends, dividends payable in the stocks or bonds of another company, extraordinary cash or non-cash dividends and liquidating dividends as income or as principal or partly one and partly the other as to the trustee shall seem best, and its decision with respect thereto shall be conclusive upon all parties.

"l) To determine who are the distributees hereunder and in so doing to act upon such information as on reasonable inquiry it may deem reliable with respect to heirship, relationship, survivorship, identity, or any other fact relative to the distributee and, for so acting and relying, shall be free from liability.

"m) To make division or distribution in money or in kind or partly in money and partly in kind, including securities, real property, and undivided interests in real or personal property, making the necessary equalizations in cash, at values to be determined by the trustee, whose judgment as to values shall be binding and conclusive upon all parties at interest.

"n) To collect, receive, and receipt for the rents, issues, profits, and income of the trust estate.

"o) To sell publicly or privately, for cash or on time,

without an order of court, upon such terms and conditions as to it shall seem best any property, real or personal, included in the estate, and the purchaser shall not be required to see to the application of the proceeds, and I expressly direct that this trust shall be administered free from the jurisdiction of the County Court, Probate Court, or any other Court of the State of Colorado, or elsewhere.

"p) To exercise the same powers with reference to the control, management, and disposition whether acting as executor or as trustee.

"q) I direct that the trustee, or its successor as hereinafter provided for, shall not be compelled to give bond for the faithful discharge of its duties hereunder, and declare that the trust hereby created shall be deemed a Colorado trust and shall, in all respects, be governed by the laws of the State of Colorado.

"r) In the event of a merger, consolidation or reorganization of the Trustee hereunder, the successor to such Trustee by such reorganization, merger or consolidation having the power to act as Trustee which shall succeed to the assets and business of said Trustee, shall become the Trustee hereunder in the place and stead of the Trustee so consolidated or reorganized, provided said successor shall be a corporate Trustee authorized to administer trusts under and by virtue of the authority of the laws of the State of Colorado, and shall have a capital and surplus aggregating not less than Five Hundred Thousand Dollars ($500,000.00), and, further provided, that any successor Trustee shall have the same powers as the original Trustee.

"s) The benefits of this Foundation shall go only to institutions and inhabitants of the State of Colorado.

"t) I direct that all estate, inheritance and gift taxes of any kind or nature shall be paid from the trust fund and that the specific bequests herein made shall be net bequests to the various beneficiaries.

"u) In the management of the Western Elaterite Roof-

ing Company, I direct the Trustee to continue the present employees' life insurance program until the individual policies are in amount of One Thousand Dollars ($1000.00) each.

"v) I should be pleased if the Trustee finds it practical and possible to pay an annual bonus to each of the employees of the Western Elaterite Roofing Company while said Trustee is conducting the affairs of said company.

"w) In the operation of said The Western Elaterite Roofing Company, I would be pleased to have the Trustee make some provision for sick benefits for the employees of said company who may be incapacitated and prevented from working and need financial assistance other than that provided by Compensation Insurance Benefits.

"x) I would suggest that the following employees be retained in their respective positions so long as their services, loyalty and abilities appear to make their retention to be for the best interests of the company:

"Herbert C. Brown, Sales Manager
Esten H. Cook, Secretary and Credit Manager
Jackson M. Seawell, Vice President and Counsel
James E. Neff, Factory Superintendent.

"Of their ability in their respective positions I cannot speak too highly or of their interest and loyalty in the success of the company. I wish to bespeak the interest of the Trustee in all other employees of the company, many of whom have been friends and employees of my greatly beloved husband, Edward J. Yetter, who showed in myriad ways his interest in the welfare and well being of his employees, who, in the years Mr. Yetter has been gone, have carried on in loyalty and fidelity with me.

"4. After the foregoing specific bequests have been made from the estate or trust, I direct that the Trustee shall distribute annually the net income of said trust, known as the Edward Joseph Yetter and Helen Dean

Yetter Foundation in perpetuity for such public or educational, charitable or benevolent uses and purposes as will, in the absolute and uncontrolled discretion of the Trustee, most effectively assist, encourage and promote the well being of mankind in the State of Colorado, and primarily of the inhabitants of the City and County of Denver, Colorado, and its environs, as now or hereafter constituted, regardless of race, color or creed, which said Foundation shall be administered in perpetuity by the Trustee herein named, The United States National Bank of Denver, Colorado, or its successor, as hereinbefore provided.

"5.  I hereby nominate and appoint The United States National Bank of Denver, Colorado, to be the Executor of this my Last Will and Testament with the same powers as are given to it as Trustee, and I direct that, neither as Executor or Trustee shall it be compelled to give bond.

"In witness whereof, I have hereunto set my hand and seal this 16th day of November, A. D. 1944.

"Helen Dean Yetter (SEAL)"

The witness clause, duly executed, follows.  The first four beneficiaries named in paragraph 2 of the will are heirs-at-law, being nieces and nephews of said testatrix, and are also caveators.

The petitioner for probate of the will estimated the value of real estate at $70,000.00 and the gross value of the personalty was estimated at $450,000.00.  The principal and most valuable item in the latter appears to be the holding of all stock of the Western Elaterite Roofing Company.

From the judgment and orders of the trial court, caveators come here seeking reversal and file the following specifications of points:

"I.

"The Trust and gift contained in paragraphs three (3) and four (4) of the Will are invalid, illegal and void and of no force and effect in that they:  (a) Are ambiguous,

indefinite and uncertain, both as to purpose and as to beneficiaries; (b) Are for private and non-charitable, as well as charitable, uses and purposes; (c) Violate the rule against perpetuities. The Court erred in failing so to hold.

### "II.

"The relief prayed for in the Caveat should have been granted. The Court erred in denying such relief.

### "III.

"The provisions of Paragraphs three (3) and four (4) of the Will are invalid. The Court erred in holding them valid.

### "IV.

"Paragraphs three (3) and four (4) of the Will should not have been admitted to probate. The Court erred in admitting them to probate."

These specifications appear to be condensed in the conclusion of the brief of counsel for the caveators into the two points: 1. That the trust is not charitable; 2. Even though it be a charitable trust, it violates the rule against perpetuities.

The argument of the caveators is that the trust created in Mrs. Yetter's will is void and invalid upon the theory that it is for private and uncharitable uses and purposes, as well as for charitable uses and purposes; that the disjunctive "or" separates the four purposes of the trust and thus prevents the attachment of the charitable uses or purposes to the other three purposes named in the will, namely: benevolent, public and educational. Reliance for this position is based upon the rule laid down in the English case of *Morice v. Bishop of Durham,* 9 Ves. Jr. 399, and subsequent English and American cases that follow that rule. The objection that the beneficiaries are ambiguous and uncertain runs through this line of cases.

In this state we appear to have followed another and more numerous line of cases that do not follow *Morice v. Bishop of Durham, supra.* In *Jeffreys*

*v. International Trust Co.,* 97 Colo. 188, 48 P. (2d) 1019, the testatrix gave the entire estate, after payment of just debts, to the Denver Foundation for the benefit of needy Denver people. The declaration of trust creating that Foundation included a clause in the preamble that, "Never in the history of modern times has the welfare of mankind more urgently demanded the encouragement and promotion of gifts for educational, charitable and benevolent uses in accordance with a plan which shall (1) * * *, (2) * * *, (3) provide for the selection of the beneficiaries of such gifts by an impartial and changing committee of persons chosen for their knowledge of the educational, charitable *or* benevolent needs of the time, * * *." There ensue statements that the trustees of the Foundation accept gifts, grants, devises and bequests for public, educational, charitable and benevolent uses and purposes, and that the distribution committee of five members should be selected for their knowledge of the educational, charitable and benevolent needs of the community. Our opinion in that case contained the following statements:

"The fact that the bequest does not specify the particular individuals who shall benefit is no obstacle to the carrying out of the trust. The fact that a gift is to a class or group of indefinite persons is one of the characteristics that distinguish a public charity from a private charity. 2 Perry on Trusts (7th Ed.), §§687, 732; 3 Woerner on Administration (3d Ed.) sec. 429; 5 R.C.L., pp. 343, 347.

* * *

"It is sufficient if the testator has provided or indicated some method or means of selecting from the class or group the particular individuals to receive the benefit. 2 Perry on Trusts (7th Ed.), §713a. In the case at bar the testatrix sufficiently indicated a desire that the trust should be administered in accordance with the Denver Foundation plan, and under that plan the distribution committee has authority to select the par-

ticular individuals to receive the benefit of the bequest."

■ More recently, in *Galiger v. Armstrong*, 114 Colo. 397, 165 P. (2d) 1019, we stated: "By our pronouncements in *Clayton v. Hallett*, 30 Colo. 231, 70 Pac. 429, 59 L.R.A. 407, 97 Am. St. Rep. 117, nationally accepted as a leading case in this field, this jurisdiction is committed to what is called 'undoubtedly the better view' in 10 Am. Jur., p. 643, §82, namely, that an instrument is sufficient if it 'states the purpose of the charity in general terms and designates the beneficiaries who may partake of the benefits thereof as those of a certain designated class, leaving to the trustees the work of selecting the individuals of that class who will actually receive the benefits.' Such, in effect, also was made the statutory law of Colorado by subsequently promulgated section 1, chapter 195, S.L. 1927 (§184, c. 41, '35 C.S.A.) * * *"

Section 184, chapter 41, '35 C.S.A., reads as follows: "No gift, devise, bequest, transfer, grant or conveyance of real or personal property to religious, educational, charitable or benevolent uses, which shall in other respects be valid under the laws of this state shall be deemed invalid by reason of the indefiniteness or uncertainty of the persons designated as the beneficiaries thereunder in the instrument creating or constituting the same."

In addition to this section, we believe that the following section, 185, also is pertinent to the discussion of this case. It reads in part: "No such gift, bequest or devise contained in any will executed in accordance with the requirements of law shall be deemed invalid by reason of the incorporation by reference in the will of any written or printed resolution, declaration or trust agreement, identified as existing prior to the execution of such will, and adopted or made by any corporation or corporations authorized by law to accept and execute trusts, creating a trust to assist, encourage and promote the well being or well doing of mankind, or of the in-

habitants of any community, \* \* \*." We also call attention to sections 188 and 208, chapter 41, '35 C.S.A. Section 15, chapter 85, '35 C.S.A., as last amended (S. L. '45, p. 385, §2), reads in part as follows: "(a) There shall be exempt from the tax imposed by this chapter [referring to Colorado Inheritance Tax] all transfers to or for the use of the United States, any state or territory, or any political subdivision thereof, the District of Columbia, any public institution, society, corporation, association, or trust formed for charitable, benevolent, educational, or religious purposes; \* \* \*"

It is argued that although *Jeffreys v. International Trust Co., supra,* may determine affirmatively the validity of the trust questioned, because of uncertainty of the beneficiaries, it still does not determine whether the trust is, in fact, a charitable one. In that case the gifts were for "educational, charitable and benevolent uses," where the adjective "charitable" could well be interpreted to apply to the whole grant; whereas in the instant case it is argued that the only conjuction used is "or" in the phrase "public *or* educational, charitable *or* benevolent uses and purposes," and that it must be inferred that "charitable" is only one of four uses to which the trust can be devoted and that the other three must be construed as not charitable.

We do not agree with this interpretation. For one reason, because all four uses and purposes are further modified by the provision, "as will, in the absolute and uncontrolled discretion of the Trustee, most effectively assist, encourage and promote the well being of mankind in the State of Colorado, and primarily of the inhabitants of the City and County of Denver, Colorado, and its environs, as now or hereafter constituted, regardless of race, color or creed." Our opinion in *In re Forrester's Estate* (Johnston v. Colorado Bureau), 86 Colo. 221, 279 Pac. 721, included the following: "Justice Swayne, of the Supreme Court of the United States, says, 'A charitable use, where neither law nor public

policy forbids, may be applied to almost anything that tends to promote the well-doing and well-being of social man.' *Ould v. Washington Hospital*, 95 U. S. 303, 24 L. Ed. 450." Justice Swayne's definition includes the purposes and uses set forth in the instant case.

■ For a second reason, we believe our previous decisions bring public, educational and benevolent uses within the scope of a charitable trust. In *Gregory v. Colorado National Bank*, 91 Colo. 172, 177, 13 P. (2d) 273, we upheld as charitable a residuary trust, set up by Mrs. Schleier's will, which devoted one-half "to the care of children and/or aged people; the other half for the completion and beautification of the Civic Center above mentioned, and/or other municipal purposes set forth in the seventh item of her will." We had previously said in the opinion in that case: "The following are some of the public charitable purposes for which provision was made in various wills that we have sustained in the cases above cited: The George W. Clayton College (Clayton v. Hallett). A Public library (Clarion v. Central Co.). An ornamental gate or arch at the Civic Center in Denver (Haggin v. Trust Co.). The protection of dumb animals (In re Forrester's Estate)." To this list should be added our most recent holding in *Galiger v. Armstrong, supra,* that a trust for the education of young men in theology and medicine is a valid charitable trust.

■ For a third reason, it has been stated: "It is a familiar rule in the interpretation of instruments relating to the establishment of charities that 'the word "or" will be construed to mean "and" when this seems necessary to give effect to the meaning' of the person declaring a general purpose of that sort. *Clarke v. Andover*, 207 Mass. 91, 96 [92 N.E. 1013], and cases there cited; *McClench v. Waldron*, 204 Mass. 554, 557 [91 N.E. 126]. This rule is applicable, especially in instances where one word expresses a charitable use and the other if standing alone might not indicate a strict

charity. The dominant word is taken to be the one pointing to a charity and the more indefinite word linked with it is held to be narrowed and colored by its context or used as a synonym with it, in order to make effective the main charitable intent. Numerous illustrations may be given. In *St. Paul's Church v. Attorney General,* 164 Mass. 188 [41 N.E. 231], a gift for 'any charitable or benevolent object or objects' was upheld as a charity, 'or' being construed as 'and,' although a bequest for benevolent purposes alone was held to be too indefinite to be supported as a charity, in *Chamberlain v. Stearns,* 111 Mass. 267." The foregoing quotation is from the opinion in *Thorp v. Lund,* 227 Mass. 474, 116 N.E. 946, Ann. Cas. 1918B, 1204, in which a trust fund "to be devoted to such national *or* philanthropic purpose in Norway associated with the name of my late husband," was upheld as a valid charity. In this jurisdiction we appear to have followed the rule that wherever possible the construction that vitiates a charitable trust shall be avoided. *Clarion v. Central Co.,* 71 Colo. 482, 208 Pac. 251. Applying that rule of interpretation here would bring this case squarely within the purview of our decision in *Jeffreys v. International Trust Co., supra.*

■ *Does this trust violate the rule against perpetuities?*

We stated in *Clayton v. Hallett,* 30 Colo. 231, 70 Pac. 429, 59 L.R.A. 407, 97 Am. St. Rep. 117, "That a gift for charitable purposes will not fail for want of a trustee. That such gifts are excepted from the rule against perpetuities and accumulation." We referred to that holding in *Haggin v. Trust Co.,* 69 Colo. 135, 169 Pac. 138; *Clarion v. Central Co., supra;* and *In re Forrester's Estate, supra.*

Counsel for caveators rely upon Gray's treatise, Rule Against Perpetuities, and especially upon a quotation from chapter 18 dealing with charitable trusts, section 591, page 569, reading as follows: "Now while it is true that the nature of charitable trusts makes them inalien-

able, and therefore perpetuities, in the natural sense of that term, it is by no means a necessary incident of charitable trusts that they should be allowed to begin in the remote future; or, in other words, that they should be exempt from the operation of the Rule against Perpetuities." He states the rule in these words: "No interest is good unless it must vest, if at all, not later than twenty-one years after some life in being at the creation of the interest." It is our opinion that, even if the rule is applicable, the will in the instant case does not violate it.

The illustration "i" quoted from §401 Restatement of the Law of Trusts, vol. II, p. 1229, by counsel for caveators in the reply brief, would appear to show why this trust does not violate the rule against perpetuities. That reads: "Thus, if a testator *devises land in trust* to permit a non-charitable corporation to occupy the land so long as the corporation exists and provides that if it should cease to exist the land should be held *in trust for charitable purposes,* the intended charitable trust is invalid. If the corporation ceases to exist, a resulting trust arises in favor of the heirs of the testator." (Italics supplied.) In this illustration, title in the charitable corporation might (1) never vest at all, or (2) the vesting might occur after a life or lives in being and twenty-one years thereafter. In the instant case title to the property conveyed vests immediately. There is no prior limitation suspending the vesting. It is only the enjoyment of the trust property that is postponed until after the payment of the debts, provided in paragraph 1 of the will, and the legacies, provided for in paragraph 2 of the will.

██ The case of *Miller v. Weston,* 25 Colo. App. 231, 138 Pac. 424, 61 Colo. 588, 157 Pac. 1161, 67 Colo. 534, 189 Pac. 610, has been cited by counsel on both sides. Counsel for caveators rely upon the dictum that where title does not vest, the rule against perpetuities is applicable. We decided in that case, however, that where the words "give and bequeath" are used, title vests at

once and it does not matter that "enjoyment is postponed." And we there (67 Colo. 534, 540) said, "A vested right to a share in the proceeds goes at once to each legatee by virtue of the words, 'I give and bequeath,' which are used in each bequest and which confer 'a present fixed right to future enjoyment' (40 Cyc. 198, note 93), the possession and enjoyment but not the right being postponed until the executors are able to execute the will. *Chandler [Candler] v. Dinkle,* 4 Watts. 143."

In *Gregory v. Colorado Natl. Bank, supra,* where the residuum of an estate was bequeathed to a trustee of a charitable trust, we held that the rule against perpetuities did not apply.

We also add the following quotation from *Collis v. Walker,* 272 Mass. 46, 172 N.E. 228, Massachusetts being the home state of Gray, the author of Rule Against Perpetuities: "The contestant further argues that the phrase of the will, '*After* the payment of my just debts and funeral charges,' prefacing the clauses whereby the property is disposed of by legacies and devises, violates the rule against perpetuities. * * * Such a clause adds nothing to the duty imposed upon all executors by law. It does not enlarge the rights of creditors, nor limit the rights of devisees and legatees. It does not postpone or affect the time when property vests under the will. *It does not refer to the time of vesting, but simply recognizes that the amount due beneficiaries may be diminished to the extent of those charges. It has to do with the quantum and not with limitations of the estates created by the will.* There is nothing contrary to this in Gray, Rule against Perpetuities, (3d ed.) §415."

It is further contended that sub-paragraphs "u," "v" and "w" of paragraph 3 of the will violate the rule. We believe that the authorities we have cited are controlling on this point also. Just as a direction to pay the just debts on a specific legacy prior to creating a charitable trust out of the residuum has to do merely

with determining the net amount of the corpus going into the trust, so the payments requested or suggested in paragraphs "u," "v" and "w" have to do with determining the *amount of the net income* of a corporation, the stock of which is held by the trust. It will be noted that legacies for present employees of the Western Elaterite Roofing Company have already been provided in other parts of the will. We are not inclined to interpret paragraphs "u," "v" and "w" as containing additional legacies; but even if we were so inclined, the limitation in "u" would still be within the rule, as the increase in the policy would be within a life in being by being limited to "the present employees' life insurance program." It is to be noted that those subparagraphs are not written in the form of bequests. They have reference to the internal operating arrangements of the Western Elaterite Roofing Company, all of the stock of which is bequeathed to the trustee. Evidence showed that each employee of the company had originally started with a $500 insurance policy; that, at the time of the probate of the will, these policies had been increased to $750, and that it had been the hope of both Mr. and Mrs. Yetter that the insurance coverage for each employee would eventually reach $1,000. That explains subparagraph "u" of paragraph 3 of the will. The two other subparagraphs "v" and "w" of paragraph 3, suggesting an annual bonus for employees and sick leave benefits, respectively, also have to do with the labor-management relations of the company. The testatrix expresses her wishes on these phases of the operation of a company, the stock of which the trustee has power to sell at any time just as in the case of any other asset of the estate. In *In Re Forrester's Estate, supra,* we held that the words "I especially request," were precatory and created no binding obligation.

For pertinent cases in other jurisdictions dealing with the points involved in the instant case, see: *Mitchell v. Reeves,* 123 Conn. 549, 196 Atl. 785, 115 A.L.R. 1114;

*Irwin v. Swinney,* 44 F. (2d) 172; *Gossett v. Swinney,* 53 F. (2d) 772; *Funk Estate,* 353 Pa. 321, 45 A. (2d) 67, 163 A.L.R. 780.

We conclude that: (1) the rule against perpetuities is not applicable to the trust as set up in this will; (2) this trust is not void for uncertainty either as to purpose or as to beneficiaries; (3) the language shows an intent to create a charitable trust by the testatrix, as well as an intent that her heirs-at-law should not be her beneficiaries except in so far as she had provided for four of them in paragraph 2 of her will; and (4) the trust is in other respects a charitable trust, under our previous decisions and statutory law.

The judgment is affirmed.