*Northern Division*

## No. 8306

## MAYFIELD POPE

### v.

## NORMAND R. BRETON, et al

Argued: February 27, 1975. Decided: August 22, 1975.

Case tried to *Banks, J.* In the Municipal Court Roxbury District. Number: 64146.

Present: Flaschner, J., (Presiding), Bacigalupo, Flynn, J.J.

Kantrovitz & Kantrovitz, for plaintiff.

**Flynn, J.** This is an action of tort and contract arising out of a motor vehicle accident in Boston, Massachusetts on May 15, 1971, in which the plaintiff seeks to recover for loss of earnings or earning capacity. Count 1 of the plaintiff's declaration is in tort for negligence against the defendant Breton. Count 2 of the plaintiff's declaration is in contract for failure to pay personal injury protection benefits against the defendant Royal Indemnity Company. The answer of the defendant Breton is a general denial, contributory negligence, violation of law, statute of limitations, illegal registration, and exemption from liability under G. L., c. 90, §§34-M and 34-O and G. L., c. 231, §6-D. The defendant, Royal Indemnity Company, filed an answer in abatement alleging that the plaintiff joined in one action two separate and distinct causes of action and without waiving its answer in abatement, answered with a general denial.

The court allowed the defendant, Royal Indemnity Company's, answer in abatement.

On September 26, 1973, this Division overruled the answer in abatement filed by the defendant Royal Indemnity Company 52 Mass. App. Dec. 54.

The parties then submitted the instant case for adjudication on the following "AGREED STATEMENT OF FACTS":

"At all times pertinent hereto the plaintiff Mayfield Pope and Normand R. Breton are duly licensed and each is the owner of a motor vehicle duly registered in the Commonwealth of Massachusetts. In addition,

it is agreed by and among the parties as follows: that the defendant Royal Indemnity Company issued a standard Massachusetts motor vehicle policy to the plaintiff Pope which policy included personal injury protection benefits, that the plaintiff Pope complied with all terms and conditions of the policy and that such policy was in effect and applies to tis accident.

"On May 15, 1971, the plaintiff, while operating his motor vehicle on St. James Street, a public way in Boston, Mass., was in a collision with a motor vehicle owned and operated by the defendant Breton. As a result of said collision, the plaintiff was incapacitated from performing his work duties from May 15, 1971 to June 4, 1971.

"At the time of the collision, the plaintiff was employed as a supervisor by the Aetna Window Cleaning, 352 Newbury St., Boston, where he had worked for more than twenty-five years and was paid an average weekly salary of $275.00. The weekly salary was paid in accordance with a company policy that supervisory employees receive full salary when they are absent from work due to sickness or accident. The employer did not pay the weekly salary under a formal written wage continuation plan.

"In the event the court finds for the plaintiff, the general finding is in the amount of $825.00.

"In applying the principle of comparative negligence pursuant to G. L., c. 231, §85 (Ter. Ed.) under Count 1, the plaintiff's negligence is 15% and the defendant Breton's negligence is 85%."

The court entered a finding for the defendant Breton and Royal Indemnity Company.

The plaintiff claiming to be aggrieved by the court's finding for the defendants, the matter was reported to this Division for determination.

There are two issues to be determined in this matter where the Agreed Statement of Facts contain all the

material facts upon which the rights of the parties are to be determined in accordance with law. It thus constitutes a "case stated." *McNulty v. Boston*, 304 Mass. 305, 307, (1939). Both issues appear to be matters of first impression, arising as they do under the Massachusetts motor vehicle "no-fault" law as pertains to personal injuries St. 1970 c. 670 the pertinent provisions of which for this matter appear in G. L., c. 90, §§34-A and 34-M.

The first issue is whether the plaintiff's "no-fault" insurance carrier, Royal Indemnity Company (Royal) is liable to pay personal injury protection salary benefits to the plaintiff in a situation where the plaintiff has been gratuitously paid his salary in full in accordance with a policy of the employer for the period that the plaintiff was incapacitated from performing his duties as a result of the motor vehicle accident. We answer this in the negative and affirm the finding of the trial justice for the defendant Royal.

St. 1970 c. 670 (now part of G. L., c. 90, §34-A) in defining "personal injury protection" (P.I.P.) benefits of motor vehicle liability policy states that such payment is provided ". . . in the case of persons employed . . . at the time of an accident of any amounts *actually lost* (emphasis supplied) by reason of inability to work and earn wages or salary or their equivalent but not other income, that would otherwise have been earned in the normal course of an injured person's employment . . ."

Again, it is further provided ". . . that payments for loss of wages or salary or their equivalent . . . shall be limited to amounts *actually lost* by reason of the accident and further limited in the case of persons entitled to wages or salary or their equivalent under any program for continuation of said wages or salary or their equivalent to an amount that, together with any payments due under such a program, will provide

75% of such persons average weekly wage or salary or its equivalent for the year immediately preceeding the accident . . ."

Plaintiff's claim is concerned solely with the matter of loss of earnings or earning capacity. He contends that he is eligible for P.I.P. benefits in connection therewith notwithstanding his having been paid his salary in full by his employer for the three week period he was incapacitated as a result of the accident.

We do not subscribe to this contention. The plaintiff has sustained no actual salary loss to entitle him to P.I.P. benefits and the defendant Royal, in our opinion, is therefore not liable to pay under the "no-fault" statute whose provisions appear to be unequivocal in this regard.

In disposing of the question of Royal's liability, we need not determine whether the plaintiff received his salary from his employer as of right or purely gratuitously. He was paid under a "company policy" which we infer is a wage continuation program under the statute, pursuant to our power to draw any inferences of fact which the trial judge could have drawn on a case stated. *Cassie v. Cambridge,* 317 Mass. 346, 347 (1944), G. L., c. 231, §110. Further the constitutionality of a requirement that the insured must look first to a wage continuation plan before he may receive benefits for lost wages under c. 670 was upheld in *Pinnick v. Cleary,* 360 Mass. 1, 271, NE 2d 592, 608-609 (1971).

But, even if there were no wage continuation program or plan involved herein, Royal would not be liable for P.I.P. salary benefits in the absence of any actual salary loss on the plaintiff's part.

The second and more difficult issue to be determined is whether or not the plaintiff can prevail in a motor vehicle tort action in which damages are sought for diminution of earning capacity against the tort-

feasor in a situation where the plaintiff is ineligible for P.I.P. salary benefits from his insurer but where he has been paid his salary in full by his employer for the period of his incapacitation.

The law in this Commonwealth has long been that "(A)mong the consequences of personal injury negligently caused for which an individual party is entitled to be compensated by the wrongdoer is the loss or any lessening of his ability to work. *Shea v. Rettie,* 287 Mass. 454, 456 (1934). *Hendler v. Coffey,* 278 Mass. 339, 342 (1932). *Millmore v. Boston Elevated Railway,* 198 Mass. 370, 371 (1908).

The Agreed Statement of Facts in the case *sub judice* sufficiently sets forth a loss of earning capacity on the plaintiff's part during his period of incapacitation. Moreover, evidence of salary payments by an employer during the period of disability is inadmissible on the question of mitigation of damages where there has been a loss of earning capacity on the plaintiff's part. *Donoghue v. Holyoke Street Railway,* 246 Mass. 485, 493 (1923). *Shea v. Rettie,* 287 Mass. 454, 458. *Doherty v. Ruiz,* 302 Mass. 145, 146 (1938) Vol. II M.P.S. *Automobile Law and Practice,* Martin and Hennessey, §246, 253. Nor does it make any difference whether the payments are received as of right or as a gratuity. *Shea v. Rettie,* 287 Mass. 454, 459.

Therefore, in the absence of a "no-fault" statute in Massachusetts, the plaintiff would clearly be entitled to sue the defendant Breton at common law for his loss of earning capacity which by stipulation amounts to $825.00.

Moreover, if the plaintiff here were eligible to receive P.I.P. salary benefits he would retain his common law action against the tortfeasor for "the difference between his diminished earning capacity, as measured at common law, and the substitute percentage of actual lost wages reduced by amounts

received under any wage continuation plan recoverable under c. 670." *Pinnick v. Cleary,* supra 360 Mass., 1, 271 NE2d 592, 598.

However, the defendant Breton argues that to allow recovery against him under the circumstances involved herein would amount to double recovery on the plaintiff's part; a result that he claims was not intended by the Legislature in the enactment of the "no-fault" law.

In this regard we cite the following passages from *Pinnick v. Cleary,* 360 Mass. 1, 271 NE2d, 592, 598 608.

"In exchange for the protection extended by c. 670, (of 1970 the "no-fault" law) the accident victim loses his right to recover in tort to the extent he is eligible for personal injury protection benefits . . . . With one restriction to be discussed below, (i.e. recovery of damages for pain and suffering in motor vehicle tort actions with certain limitations and exceptions. See c. 231 §6-D) the potential plaintiff retains in addition his common law action against the tortfeasor for any elements of damage not recovered as personal injury protection benefits."

Also, "(T)he plaintiff objects to the requirement that the insured look first to a wage continuation plan before he may receive benefits for lost wages under c. 670. He cites no authority for his objections, and under applicable constitutional principles the legislature could properly limit double reimbursement for the same loss. *In any event,* c. 670 *in no way prevents him from obtaining such double recovery through his residual tort action."* (emphasis supplied).

Again, in the very recent decision of *Victum v. Martin,* 1975 Mass. Ad. Sh. 1032, 1037 it was stated "(A)s we made clear in *Pinnick v. Cleary,* supra, the no-fault statute was not intended to abrogate common law principles of damages, generally: '(T)he legis-

lature has acted with extreme caution in altering prior legal rights, changing in only one respect the elements of damages which are recoverable by the victim.' The purpose of the legislature was to close off 'minor claims for pain and suffering;' it was not the purpose of the legislature to preclude meritorious claims . . . ."

Any exemption from liability that the defendant Breton might be entitled to under G. L., c. 90, §34-M is limited to the amount that the plaintiff is entitled to in P.I.P. benefits. Where the plaintiff, as in this situation, is not entitled to P.I.P. benefits, the defendant has no such exemption. *Cyr v. Farias,* 1975 Mass. Ad. Sh. 1508, 1513.

We are aware that the net effect of this decision is that the plaintiff will be recovering the same amount twice; first by payment of his salary by his employer, and again as damages in connection with his lost earning capacity which damages in this case are stipulated to be in the same amount as the salary paid to him while he was incapacitated as a result of the accident.

However, we cannot read into a statute an intent not expressed in plain words or by necessary implication, *Tilton v. C. Haverhill,* 311 Mass. 572, 578 (1942).

"If the omission [i.e. to provide against double recovery through the means of a residual tort action] was intentional no court can supply it. If the omission was due to inadvertence, an attempt to supply it . . . would be tantamount to adding to a statute a meaning not intended by the legislature."

*Mitchell v. Mitchell,* 312 Mass. 154, 161 (1942). *Boylston Water District v. Tahanto Regional School District,* 353 Mass. 81, 84 (1967).

The finding for the defendant Breton is reversed and judgment is to be entered for the plaintiff on Count 1 in the amount of $701.25 in accordance with

the Agreed Statement of Facts. The finding for the defendant Royal Indemnity Company on Count No. 2 is affirmed. **So ordered.**